THE STATE EX REL. HULLS, APPELLANT, *v.* STATE TEACHERS
RETIREMENT BOARD OF OHIO, APPELLEE.

[Cite as *State ex rel. Hulls v. State Teachers Retirement
Bd. of Ohio,* 113 Ohio St.3d 438, 2007-Ohio-2337.]

(No. 2006–1741—Submitted May 2, 2007—Decided May 30, 2007.)

---

Per Curiam.

{¶ 1} This is an appeal from the denial of a writ of mandamus to compel appellee, State Teachers Retirement Board of Ohio, to reinstate the disability-retirement benefits of appellant, Edward M. Hulls, and to pay those benefits from the date that the retirement board terminated them. Because we hold that the retirement board did not abuse its discretion by ordering more than one medical examination of Hulls in the same year, we affirm.

### Disability–Retirement Benefits: Initial Application and Determination

{¶ 2} Hulls was employed as a teacher for 19 years at the Southeast Career Center in Columbus, Ohio, where he taught plumbing. Hulls stopped teaching in May 1996.

{¶ 3} In December 1996, Hulls filed an application for disability-retirement benefits with the State Teachers Retirement System of Ohio. In his application, Hulls described the nature of his disability as follows:

{¶ 4} "After start of school year in '94,' while at work I would feel faint, very dizzy, sick at my stomach to the point of going into [the] locker room and lying on [the] floor. Very short tempered with not only students, but almost everyone. Could not sleep nights, would be fine on weekends. Started going to doctor for various tests—Blood, MRI etc.—then was sent to psychologist. I was under both doctors['] care for approximately 1½ years for these conditions. Dr. Whetstone put me on Zoloft for a while but it didn't help. Several times on the drive to school I pulled over and called in sick. It got so bad at the latter part of school year '96' [that] Dr. Mason suggested [I] take off the rest of the year."

{¶ 5} In support of his application, Hulls submitted reports from his psychologist, John H. Mason, Ph.D., and his physician, Paul Whetstone, M.D. They both certified that as of May 1996, Hulls was permanently incapacitated for the performance of his duties as a teacher. Mason diagnosed Hulls as suffering from "Major Depression, Recurrent, Severe" and Dr. Whetstone diagnosed Hulls with depression.

{¶ 6} The retirement board referred Hulls to psychiatrist Jerold H. Altman, M.D., for a psychiatric examination. According to Dr. Altman, Hulls noted that he had always loved teaching until around 1994, when the students became more disruptive and the school administrators failed to support the teachers. Hulls stated that although he saw Mason every four to six weeks, he did not think that the treatment was helping him much. In 1994, Hulls bought a restaurant, and he now helps his mother run it. He also does some plumbing and remodeling work. Dr. Altman concluded that Hulls was permanently and completely impaired on a psychiatric basis "[d]ue to his lack of ability to develop insight and to tolerate and deal with the situation."

{¶ 7} Earl N. Metz, M.D., the chairman of the medical review board for the retirement board, recommended approval of Hulls's application for disability-retirement benefits on the condition that Hulls secure psychiatric treatment. Hulls agreed to obtain psychiatric treatment or continue with the treatment he had been receiving for the previous two years.

{¶ 8} The retirement board approved Hulls's application and began paying him disability-retirement benefits.

### 1998 Determination to Continue Benefits

{¶ 9} In 1998, the retirement board ordered Hulls to be reexamined by Dr. Altman in order to determine whether his benefits should be continued. Dr. Altman examined Hulls and noted that since his retirement from teaching, Hulls's condition had "markedly improved." Dr. Altman nevertheless recommended that Hulls not return to teaching, because "[a]lthough there is no psychiatric disorder now, certainly his feeling the threat of having to return to such a teaching environment causes marked anxiety and depressed mood."

{¶ 10} Charles F. Wooley, M.D., George H. Lohrman, M.D., and Ernest L. Mazzaferri, M.D., members of the medical review board, reviewed Dr. Altman's new report. Dr. Wooley and Dr. Mazzaferri concluded that Hulls was not permanently incapacitated from performing his job and recommended that his disability-retirement benefits be terminated. Dr. Lohrman was uncertain whether Hulls remained disabled and recommended either discussing the case in a special conference or ordering another psychiatric evaluation.

{¶ 11} The retirement board then ordered Hulls to have another psychiatric examination, this time by Stephen F. Pariser, M.D. Dr. Pariser diagnosed Hulls with major depression, single episode, in full remission, as well as adjustment disorder with depressed mood, and panic disorder. Dr. Pariser concluded that Hulls "could return to work, either in a classroom setting with better adjusted students or as a plumber in a school system" and that "[s]hould symptoms of depression or panic re-emerge, he should be promptly seen by a psychiatrist and treated with an antidepressant."

{¶ 12} In July 1998, the medical review board agreed with Dr. Pariser's opinion and recommended that Hulls's disability retirement be terminated. The disability-review committee of the retirement board, however, rejected the medical review board's recommendation and instead recommended that Hulls's disability-retirement benefits be continued. Based on this recommendation, Hulls's benefits continued.

### Additional Examinations and 2004 Retirement– Board Decision Terminating Benefits

{¶ 13} About five years later, in September 2003, the retirement board ordered Hulls to be reexamined to determine whether his disability-retirement benefits

should be continued. Pursuant to the board's order, Hulls was examined by psychiatrist Richard H. Clary, M.D. In his September 29, 2003 report, Dr. Clary concluded that Hulls should continue to receive disability-retirement benefits:

{¶ 14} "Mr. Hulls has been receiving appropriate psychiatric treatment since 1994. He continues to treat with Dr. Mason, a psychologist. Mr. Hulls said he has not been involved in the plumbing business now for several years and operates a bar and restaurant. I do have some concern about his alcohol intake and he said he drinks about a case of beer per week or about 3 beers per day.

{¶ 15} "In my medical opinion, Mr. Hulls is unable to return to his job at Southeast Career Center teaching plumbing and he should continue on long term disability."

{¶ 16} Less than a month after receiving Dr. Clary's report, the retirement board ordered that Hulls be examined by another psychiatrist, Michael R. Mizenko, D.O. According to Dr. Metz, the chairman of the medical review board, the additional examination was prompted by a misstatement in Dr. Clary's report that Hulls had received psychiatric treatment and by the fact that there had been no diagnosis of Hulls having any major psychiatric disorder for several years:

{¶ 17} "[A] follow-up exam was done by Dr. Richard Clary in September 2003. Dr. Clary noted an absence of psychiatric symptoms. Oddly, Dr. Clary commented that Mr. Hulls ' * * * has been receiving appropriate psychiatric treatment since 1994,' even though the record does not show that Mr. Hulls has ever seen a psychiatrist other than [State Teachers Retirement System] examiners, nor has he taken any anti-depressant or anti-anxiety medications other than a short trial of Zoloft which he found to be not helpful, and he has never had a psychiatric hospital admission. Nevertheless, Dr. Clary made a diagnosis of *dysthymic disorder* and recommended continuation of the disability.

{¶ 18} "Being on disability retirement for more than six years without a major psychiatric diagnosis or symptoms seemed out of the ordinary to the Medical Review Board so yet another psychiatric examination was scheduled the following month—this time with Dr. Michael Mizenko." (Emphasis sic.)

{¶ 19} Dr. Mizenko examined Hulls on October 29, 2003, and concluded that Hulls's disability-retirement benefits should not be continued, because he is capable of resuming full-time teaching duties. Dr. Mizenko diagnosed Hulls with "Major Depression Disorder, Recurrent, Severe, *in full remission*." (Emphasis sic.) Dr. Mizenko observed that Hulls had recovered from his depressive disorder and that the potential for a reoccurrence of his disability did not constitute a permanent psychiatric disability:

{¶ 20} "The medical records in Mr. Hulls' report clearly indicate that at the time of his initial application for disability status with [the State Teachers

Retirement System] of Ohio, he was seriously depressed with associated somatic and anxiety symptoms. With a break from teaching and the benefit of treatment, Mr. Hulls recovered from his depressive disorder. He has not experienced a reoccurrence to date. At this time, Mr. Hulls' psychotherapy treatment is an empty exercise (only satisfying the expectations of [the State Teachers Retirement System] ), and he is not interested in working on what seems to be his limited motivation and capacity to work through challenging and difficult circumstances. He refuses to consider an adaptive strategy to reposition his mental attitude in the service of finding a way to function in the workplace. Of course, he is not taking any psychotropic medication because he does not view himself as having a psychiatric condition.

{¶ 21} "Thus, Mr. Hulls appears to advance the argument that his disability status is justified by *the potential* of a mental illness. He has every right to refuse[ ] to accept the political/administrative circumstances—as he sees them—within the school where he taught. However, his situation does not constitute the presence of a psychiatric disability. Permanent disability requires the downhill course of a teacher's mental status because that teacher has a mental illness, not the refusal to work in a school because the teacher believes that the school has gone downhill." (Emphasis sic.)

{¶ 22} In January 2004, the medical review board unanimously recommended that Hulls's benefits be terminated, finding that he was not permanently incapacitated from performing his teaching duties and was capable of resuming regular full-time teaching duties. The board felt that Dr. Mizenko's 2003 medical report was the most credible. The disability review committee unanimously recommended approval of the recommendation of the medical review board and recommended that Hulls's disability-retirement benefits be terminated. In December 2004, the retirement board terminated Hulls's disability-retirement benefits.

### Mandamus Case

{¶ 23} In June 2005, over six months after his benefits were terminated, Hulls filed a complaint in the Court of Appeals for Franklin County for a writ of mandamus to compel the retirement board "to reinstate his disability retirement benefits and to pay him benefits back to the effective date of his disability termination, and to continue his benefits into the future." Hulls also requested monetary damages of $100,000. Hulls claimed that the retirement board had not been authorized to order that he be examined by Dr. Mizenko a little over a month after he had been examined by Dr. Clary and that the retirement board abused its discretion by terminating his disability-retirement benefit. In August 2006, the court of appeals denied the writ.

{¶ 24} This cause is now before the court upon Hulls's appeal as of right.

### Mandamus to Correct Administrative Abuse of Discretion

{¶ 25} Hulls asserts that the court of appeals erred in denying the writ of mandamus to compel the retirement board to reinstate his disability-retirement benefits. The General Assembly established the State Teachers Retirement System to pay retirement allowances and other benefits of Ohio public school teachers. R.C. 3307.03; see, generally, Hastings, Manoloff, Sheeran & Stype, Baldwin's Ohio School Law (2007), Section 11:1 ("In general, the system is a defined benefit pension plan which provides retirement, death, and disability benefits"). The retirement board administers and manages the retirement system. R.C. 3307.04.

{¶ 26} The determination of whether a member of the State Teachers Retirement System is entitled to disability retirement is solely within the province of the retirement board. R.C. 3307.62(F) ("The state teachers retirement board shall render an order determining whether or not the applicant shall be granted a disability benefit"). Similarly, the determination of whether a retirement-system member is entitled to the continued receipt of disability-retirement benefits is also within the exclusive authority of the retirement board. R.C. 3307.64; Baldwin's Ohio School Law, Section 11:30 ("A disability benefit may be terminated at the recipient's request or when the retirement board determines, based on a medical examination, that the recipient is capable of resuming service similar to that from which he was found disabled"). Neither R.C. 3307.62 nor 3307.64 provides for an appeal from the retirement board's decision denying or terminating these benefits.

{¶ 27} Because the final retirement-board decision is not appealable, mandamus is available to correct an abuse of discretion by the board in its determination concerning disability-retirement benefits. See, e.g., *State ex rel. Pipoly v. State Teachers Retirement Sys.*, 95 Ohio St.3d 327, 2002-Ohio-2219, 767 N.E.2d 719, ¶ 14, and cases cited therein ("The determination by [the State Teachers Retirement System] and its retirement board [the State Teachers Retirement Board] of whether a person is entitled to disability retirement benefits is reviewable by mandamus because R.C. 3307.62 does not provide any appeal from the administrative determination"); *State ex rel. Worrell v. Ohio Police & Fire Pension Fund*, 112 Ohio St.3d 116, 2006-Ohio-6513, 858 N.E.2d 380, ¶ 10 ("Because the final board decision is not appealable, mandamus is available to correct an abuse of discretion by the board in denying disability-retirement benefits"). This is consistent with the general rule that "mandamus is an appropriate remedy where no statutory right of appeal is available to correct an abuse of discretion by an administrative body." *Pipoly* at ¶ 14, citing *State ex rel. Alben v. State Emp. Relations Bd.* (1996), 76 Ohio St.3d 133, 135, 666 N.E.2d 1119. "An abuse of discretion occurs when a decision is unreasonable, arbitrary, or unconscionable."

*State ex rel. Stiles v. School Emps. Retirement Sys.,* 102 Ohio St.3d 156, 2004-Ohio-2140, 807 N.E.2d 353, ¶ 13.

### Does R.C. 3307.64 Permit Multiple Examinations within a Year to Determine Continued Entitlement to Disability–Retirement Benefits?

{¶ 28} Hulls contends that the retirement board abused its discretion by ordering him to undergo a psychiatric examination by Dr. Mizenko in 2003, slightly more than a month after ordering him to undergo a psychiatric examination by Dr. Clary. Hulls claims that R.C. 3307.64 authorizes the board to order a disability-benefit recipient to submit to *only one medical examination per year,* which prevents the board from "doctor shopping" when the first examination results in a recommendation in favor of the recipient.

{¶ 29} R.C. 3307.64 provides:

{¶ 30} *"The state teachers retirement board shall require any disability benefit recipient to submit to an annual medical examination by a physician selected by the board,* except that the board may waive the medical examination if the board's physician certifies that the recipient's disability is ongoing. If a disability benefit recipient refuses to submit to a medical examination, the recipient's disability benefit shall be suspended until the recipient withdraws the refusal. If the refusal continues for one year, all the recipient's rights under and to the disability benefit shall be terminated as of the effective date of the original suspension.

{¶ 31} *"After the examination, the examiner shall report and certify to the board whether the disability benefit recipient is no longer physically and mentally incapable of resuming the service from which the recipient was found disabled.* If the board concurs in a report by the examining physician that the disability benefit recipient is no longer incapable, the payment of a disability benefit shall be terminated * * *." (Emphasis added.)

{¶ 32} "In construing a statute, our paramount concern is legislative intent." *State ex rel. Musial v. N. Olmsted,* 106 Ohio St.3d 459, 2005-Ohio-5521, 835 N.E.2d 1243, ¶ 23. "Determining this intent requires us to read words and phrases in context and construe them in accordance with rules of grammar and common usage." *State ex rel. Russell v. Thornton,* 111 Ohio St.3d 409, 2006-Ohio-5858, 856 N.E.2d 966, ¶ 11.

{¶ 33} The plain language of R.C. 3307.64 *requires* the retirement board to order any disability-benefit recipient to submit to an annual medical examination by a board-selected physician, unless the board waives the exam upon a physician's determination that the disability is ongoing, but *does not preclude* the board from requiring further examinations when appropriate. As the court of

appeals reasoned in rejecting Hulls's contention that the board is limited to *one* medical examination of any disability-benefit recipient per year:

{¶ 34} "R.C. 3307.64's command that respondent 'shall require any disability benefit recipient to submit to an annual medical examination by a physician selected by the board' establishes what the board, at a minimum, must do annually with respect to the determination of ongoing disability. Thus, contrary to relator's suggestion here, R.C. 3307.64's reference to 'an annual examination' cannot be viewed as a prohibition or restriction on the board's authority to order the number of medical examinations that are appropriate to the circumstances of the recipient's particular disability."

{¶ 35} In effect, Hulls requests that we add language to R.C. 3307.64 that prevents the board from ordering more than one medical examination in any given year, regardless of whether the circumstances warrant further examinations. This we cannot do. See, e.g., *State ex rel. Asti v. Ohio Dept. of Youth Servs.*, 107 Ohio St.3d 262, 2005-Ohio-6432, 838 N.E.2d 658, ¶ 29 (court cannot add words to or delete words from statutes).

{¶ 36} This conclusion is further supported by Ohio Adm.Code 3307:1–7–06, which was "established pursuant to section 3307.64 of the Revised Code" and expressly authorizes the retirement board to require a disability-benefit recipient to submit to more than one medical examination in a year:

{¶ 37} "(A) *The retirement board may require a recipient to submit to medical examinations and tests by independent medical examiners * * * and shall require such examinations and tests if:*

{¶ 38} "(1) The chair of the medical review board recommends such examinations and tests as necessary and appropriate to evaluate the recipient's continued eligibility for disability benefits * * *." (Emphasis added.)

{¶ 39} Notwithstanding Hulls's assertions to the contrary, the fact that the rule allows the retirement board to order more than one exam per year does not mean that the rule is either unreasonable or in conflict with R.C. 3307.64.[1] Instead, the rule is valid because it was promulgated pursuant to statute and is reasonable and consistent with the provisions of R.C. 3307.64. See *State ex rel. Reyna v. Natalucci–Persichetti* (1998), 83 Ohio St.3d 194, 197, 699 N.E.2d 76; *State ex rel. Celebrezze v. Natl. Lime & Stone Co.* (1994), 68 Ohio St.3d 377, 382, 627 N.E.2d 538 ("an administrative rule that is issued pursuant to statutory authority has the force of law unless it is unreasonable or conflicts with a statute covering the same subject matter").

---

1. The version of Ohio Adm.Code 3307:1–7–06 in effect until July 2006 differs slightly from the current version, which is quoted, but Hulls's argument—that the rule allows more than one medical exam a year and the statute allows only one—applies equally to the current version.

{¶ 40} Therefore, R.C. 3307.64 does not preclude a second medical examination of a disability-benefit recipient within the same year.

### Board's Termination of Disability–Retirement Benefits

{¶ 41} Hulls also contends that the board abused its discretion in determining that a second examination by a different psychiatrist was required after Dr. Clary concluded that Hulls continued to be disabled.

{¶ 42} As the record establishes, however, Dr. Metz, the chairman of the medical review board, specified that Dr. Clary noted an absence of psychiatric symptoms and erroneously stated that Hulls had been receiving psychiatric treatment since 1994 when, in fact, he had been treated by a psychologist rather than a psychiatrist during that period. Notably, the retirement board had earlier conditioned Hulls's continued receipt of benefits on his seeking psychiatric treatment, which Hulls never did. Under these circumstances, and without a diagnosis of any major psychiatric illness for several years, the retirement board did not act in an unreasonable, arbitrary, or unconscionable manner in ordering that Hulls undergo a second psychiatric examination. See *State ex rel. Ruby v. State Teachers Retirement Sys. of Ohio* (Dec. 6, 1989), Summit App. No. 13844, 1989 WL 147983, *1 ("where the record contains evidence which supports the agency's findings, this court will not disturb that determination"); Baldwin's Ohio School Law, Section 11:30, fn. 1 ("So long as evidence—even if conflicting—supports the board's findings, a reviewing court will not disturb them").

### Conclusion

{¶ 43} Based on the foregoing, the retirement board did not abuse its discretion in ordering a second psychiatric examination of Hulls a little over a month after a previous board-ordered psychiatric examination. Therefore, because Hulls failed to establish any abuse of discretion on the part of the board, he proved neither a clear legal right to have the board reinstate his disability-retirement benefits nor a corresponding clear legal duty on the part of the board to reinstate these benefits. Accordingly, we affirm the judgment of the court of appeals denying the requested writ of mandamus.

Judgment affirmed.

MOYER, C.J., LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER and CUPP, JJ., concur.

PFEIFER, J., concurs in judgment only.

----

Manos, Martin, Pergram & Dietz Co., L.P.A., and James M. Dietz, for appellant.

Marc Dann, Attorney General, and John E. Patterson, Assistant Attorney General, for appellee.