[Cite as *State ex rel. Ewart v. State Teachers Retirement Sys. Bd.*, 2019-Ohio-2459.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Teresa Ewart, | : | |
| Relator-Appellee, | : | |
| v. | : | No. 18AP-826 |
| | | (C.P.C. No. 17CV-11214) |
| State Teachers Retirement System Board of Ohio, | : | |
| | | (ACCELERATED CALENDAR) |
| Respondent-Appellant. | : | |
| | : | |

D E C I S I O N

Rendered on June 20, 2019

**On brief:** *Jones Law Group, LLC*, and *Eric A. Jones*, for appellee. **Argued:** *Eric A. Jones.*

**On brief:** [*Dave Yost*], Attorney General, *John J. Danish*, and *Mary Therese J. Bridge*, for appellant. **Argued:** *Lydia M. Zigler.*

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Respondent-appellant, State Teachers Retirement System Board of Ohio ("STRB"), appeals the September 26, 2018 judgment of the Franklin County Court of Common Pleas granting the writ of mandamus requested by relator-appellee, Teresa Ewart, and ordering STRB to reinstate appellee's disability benefits. For the following reasons, we reverse the trial court judgment and remand the matter to the trial court for further proceedings consistent with this decision.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2}    Appellee worked as an eighth grade science teacher in a public school system, and is a member of the State Teacher Retirement System ("STRS").  In May 2014, she submitted a disability benefit application listing "chronic laryngitis" and "vocal cord scar" as disability conditions.  (Record of Proceedings at 15.)  Appellee's attending physician, Dr. Paul Bryson, provided a report dated May 12, 2014 indicating that following an examination, bioposy, and videostroboscopy, these stated conditions were permanently disabling "from a voice standpoint."  (Record of Proceedings at 31.)  Dr. Bryson certified his opinion that appellee "is currently" incapacitated and the disability "is currently" considered to be permanent.  (Record of Proceedings at 30.)

{¶ 3}    The medical review board of STRS asked Dr. L. Arick Forrest to act as an independent medical physician in the case.  In June 2014, Dr. Forrest examined appellee and performed a "flexible fiberoptic laryngoscopy with stoboscopy" ("laryngoscopy"). (Record of Proceedings at 38.)  The procedure revealed: "[t]he true vocal cords are mobile bilaterally.  The medial edges appear straight.  There was incomplete closure with a small anterior gap at areas 1 and 2.  The mucosal wave was reduced in the anterior third on the left.  There is mild interarytenoid pachydermia and post cricoid edema."  (Record of Proceedings at 38.)  Dr. Forrest's impression upon examination was that appellee's "current hoarseness/voice changes are consistent with: Vocal cord scarring" and that her "[v]oice is disproportionate to the physical findings."  (Record of Proceedings at 39.)  Dr. Forrest opined that in her current state it would be difficult for appellee to return to work, but that the condition "should be considered a short-term disability (3-6 months)" in order to evaluate her response to therapy.  (Record of Proceedings at 39.)  Dr. Forrest certified that appellee should not be considered or presumed permanently incapacitated and that she should not be retired.

{¶ 4}    Based on Dr. Forrest's recommendation, the chair of the STRS medical review board advised a medical treatment period of six months prior to making the determination of disability.  In September 2014, Dr. Bryson sent STRS an update, noting the initial benefit appellee received from a left vocal cord injection diminished since she returned to teaching. Dr. Bryson performed a "Left medialization laryngoplasty" on appellee at the end of October 2014.  (Record of Proceedings at 55.)  At a follow up visit to

the surgery, Dr. Bryson noted "some improvement" including improvement of glottis closure.  (Record of Proceedings at 51.)  At a subsequent January 2015 follow up visit, Dr. Bryson stated "[t]here continues to be chronic hoarseness and recurrent vocal fold inflammation * * * despite maximal medical therapy and surgical therapy."  (Record of Proceedings at 57.)

{¶ 5}   Dr. Forrest conducted a follow-up examination and laryngoscopy in February 2015. The procedure revealed: "[t]he true vocal cords are mobile bilaterally.  The medial edges appear straight.  The left true fold is more full as compared to her last exam. The true folds have mild erythema.  There was near complete closure. The mucosal wave was present with reduced amplitude.   There is mild interarytenoid pachydermia and post cricoid edema."  (Record of Proceedings at 67-68.)  Dr. Forrest's impression was that appellee's "current hoarseness/voice changes are consistent with: Vocal cord scarring s/p surgery" and that her "[v]oice is still disproportionate to the physical findings. The degree of pain is not typical for vocal cord scarring."  (Record of Proceedings at 68.)  Dr. Forrest opined that "[b]ased on her current voice and odynophonia it would be difficult for [appellee] to return to work from a physical and psychological perspective," but still considered the condition a short-term disability (three to six months) in order to further evaluate the cause or source of the pain.  (Record of Proceedings at 68.)  Dr. Forrest certified his opinion that appellee is not disabled.

{¶ 6}   Three physicians, Dr. James Allen, Dr. Albert Kolibash, and Dr. Barry Friedman, reviewed appellee's records and the recommendations of Drs. Forrest and Bryson. Drs. Allen and Friedman favored granting disability, with recommendations to reevaluate appellee in one-year. Dr. Kolibash had concerns with appellee's ability to perform her teaching responsibility and requested to discuss options with the STRS medical review board prior to making a final recommendation.  By letter dated April 14, 2015, the medical review board of STRS recommended granting disability benefits, and STRB followed the recommendation.

{¶ 7}   Appellee was reevaluated by both Drs. Bryson and Forrest in 2016. Dr. Bryson's reevaluation on May 4, 2016 included a physical examination and laryngoscopy.  Dr. Bryson's report states that appellee's "[v]oice remains severely hoarse and use is associated with pain and discomfort that is managed by rest and pain

management. Exam reveals a well medialized left vocal fold but with persistent diminished pliability bilaterally. Closure is complete." (Record of Proceedings at 80.) According to Dr. Bryson, appellee's prognosis for recovery was "poor" and she would not be able to return to vocal demands of prior teaching. (Record of Proceedings at 80.)

{¶ 8} Dr. Forrest's reexamination on August 15, 2016 of appellee also consisted of a physical examination and a laryngoscopy. The procedure showed: "[t]he true vocal cords are mobile bilaterally with some reduced abduction on the left. The medial edges appear straight, except for a prominent left vocal process. The left true fold is more full as compared to her last exam and has mild erythema. There was near complete closure. The mucosal wave was present with reduced amplitude on the left. There is mild interarytenoid pachydermia and post cricoid edema." (Record of Proceedings at 92.) Dr. Forrest states as his impression and plan:

> [Appellee] has hoarseness/voice changes related to her vocal cord scarring s/p surgery and vocal fold atrophy/vocal cord paresis s/p medialization laryngoplasty. [Appellee]'s voice and degree of pain is disproportionate to the physical findings. The severity and chronic nature of her pain is very atypical for vocal cord scarring.
>
> Based on her current voice and odynophonia it would be difficult for her to return to work from a psychological perspective. I still feel this should be considered a short term disability (3-6 months) to further evaluate the etiology of the pain. Based on the disparity between exam and symptoms there certainly could be a functional or psychological component. The systems being disproportionate to the physical findings has been consistent across her three examinations.

(Record of Proceedings at 92.) Dr. Forrest ultimately certified that appellee was not capable of resuming her job and that disability benefits should be continued. He also indicated that he did not presume such disability to be permanent and recommended reexamination in 6 to 12 months.

{¶ 9} The STRB requested Dr. Joel Steinberg provide an independent psychiatric evaluation of appellee. After examining appellee in September 2016 and reviewing her medical records, Dr. Steinberg noted she failed one of the three symptom validity tests, which raised some doubt as to how much credibility could be placed on other tests and the

history offered by appellee. In his discussion, Dr. Steinberg states that he is "not able to comment" on whether the pain appellee experiences is considerably more than what is typical with laryngeal scarring. (Record of Proceedings at 112.) According to Dr. Steinberg, a psychological source of her pain is a possibility, but he believed it was more likely that pain and resulting limitation are the causes of her psychiatric distress. Dr. Steinberg additionally notes "there is no evidence * * * that her vocal cord situation is any better now than it was at the time that she began receiving STRS benefits." (Record of Proceedings at 113.) Overall, it was Dr. Steinberg's impression that appellee had "Major Depressive Disorder, recurrent type, currently of moderate severity," and concluded that her psychiatric problems were not disabling. (Record of Proceedings at 113.) Dr. Steinberg certified that, on a psychiatric basis alone, appellee is capable of resuming her job and that disability benefits should not continue.

{¶ 10} On January 9, 2017, Dr. Forrest reexamined appellee; his report does not show he conducted a new laryngoscopy. Under his impression/plan, Dr. Forrest states: "[Appellee] has hoarseness/voice changes related to her vocal cord scarring s/p surgery and vocal fold atrophy/vocal cord paresis s/p medialization laryngoplasty. [Appellee's] voice and degree of pain is disproportionate to the physical findings and this could be compensatory muscle tension dysphonia. Based on her current voice and odynophonia it would be difficult for her to return to work from a psychological perspective." (Record of Proceedings at 117.) Dr. Forrest certified that appellee was not capable of resuming her job and that disability benefits should be continued. When asked whether appellee's subjective complaints and symptoms correlate with the medical evidence, Dr. Forrest checked the box for "Yes." (Record of Proceedings at 119.)

{¶ 11} By letter dated January 24, 2017, the STRS medical review board asked Dr. Forrest to clarify his opinion, asking "[f]rom an ENT perspective only, does [appellee] have objective painful dysphonia that would interfere with her functioning as a teacher?" (Record of Proceedings at 120.) Dr. Forrest submitted a new reexamination form dated February 21, 2017, that stated appellee was capable of resuming regular full-time service similar to that from which she was retired and that disability benefits should not be continued. When asked whether appellee's subjective complaints and symptoms correlate with the medical evidence, Dr. Forrest checked the box for "No" and states, "[o]n medical

exam, there is no evidence that [appellee] cannot teach. Her only limitation is her perception of pain with speaking." (Record of Proceedings at 122.)

{¶ 12} Three physicians, Dr. Marc Cooperman, Dr. Allen, and Dr. Jeffery Hutzler, reviewed appellee's medical records and the various recommendations. Dr. Cooperman concluded appellee remained disabled based on her vocal cord problems, which cause her hoarseness, pain, and inability to speak for prolonged periods. He believed it is possible her condition would improve with therapy, and recommended repeat examination in one year. By letter dated March 7, 2017, Dr. Allen found no objective evidence of a laryngeal or psychiatric condition that prevents her from returning to work. Instead, Dr. Allen thought it appeared appellee fell into a category of chronic pain, which "is difficult to justify disability as a teacher purely on a pain diagnosis." (Record of Proceedings at 126.) He favored terminating benefits, but recommended a special conference of the STRS medical review board to discuss the matter. Dr. Hutzler concluded in a March 8, 2017 letter that appellee's hoarseness and pain was primarily based on a psychiatric disorder, and she is not disabled from a psychiatric standpoint. Dr. Hutzler believed appellee was capable of returning to work and that benefits should not be continued.

{¶ 13} By three separate letters dated March 20, 2017, Drs. Cooperman, Allen, and Hutzler indicated that the STRS medical review board met in a special conference to consider the reexamination of appellee, after which the medical review board voted unanimously to terminate disability benefits. The letter from Dr. Allen states at the conference the medical review board noted appellee has had laryngoscopies that have not demonstrated an objective basis for her hoarseness and throat pain, and that members of the medical review board raised the question of whether she may have an underlying somatization disorder, which does not warrant disability. However, Dr. Allen concluded that regardless of a somatization disorder, appellee has a "chronic pain syndrome without significant structural laryngeal abnormalities" and states "[c]hronic pain syndromes are rarely, if ever, grounds for disability as a teacher." (Record of Proceedings at 132.)

{¶ 14} On April 4, 2017, Dr. Bryson wrote a letter to STRS reiterating his opinion that appellee is vocally disabled. On April 20, 2017, STRB, noting the condition benefits were approved upon was "[h]oarseness," took official action to terminate appellee's

disability benefits under R.C. 3307.48, effective August 31, 2017.  (Record of Proceedings at 135.)

{¶ 15} Appellee administratively appealed the termination decision, submitted additional medical records from Drs. Bryson and David Brinkman-Sull, a mental health practitioner, and requested a hearing pursuant to Ohio Adm.Code 3307:1-7-05.  Following review of her case and the new medical data submitted, the STRS medical review board requested an additional independent medical examination from Dr. Blaize O'Brien and for Dr. Steinberg to review the additional material submitted by appellee.

{¶ 16}  Dr. O'Brien conducted a physical examination and laryngoscopy on appellee. The notes from the laryngoscopy indicate "[s]light glottic gap" of the right true vocal cord. (Record of Proceedings at 212.)   No other abnormalities were revealed. Dr. O'Brien concluded that appellee was not medically incapacitated.  He indicated that appellee's subjective complaints and symptoms do correlate with medical evidence, but, that his findings on appellee's physical exam "do not correlate well with the degree of impairment that she is experiencing."  (Record of Proceedings at 211.)  According to Dr. O'Brien, nothing he found on the exam would preclude appellee from returning to teaching.  Dr. O'Brien certified that appellee is capable of resuming regular full-time service similar to that from which she retired and that disability benefits should not be continued.

{¶ 17}  Dr. Steinberg reviewed the entire file, including the records appellee provided from Dr. Brinkman-Sull.  He certified his previous opinion that, on a psychiatric basis alone, appellee is capable of returning to service and that disability should not be continued. Dr. Steinberg noted that he did "not identify the pain problem as being of psychosomatic origins."  (Emphasis omitted.) (Record of Proceedings at 227.)

{¶ 18} An appeal hearing on the termination of appellee's disability benefits was held before the STRS disability review panel on August 16, 2017.  Appellant personally appeared.  The following day, STRB took official action to affirm its prior decision to terminate the benefits.

{¶ 19} On December 20, 2017, appellee filed a complaint in mandamus with the Franklin County Court of Common Pleas asking the court to compel STRB to reinstate disability benefits on a continuing and retroactive basis.  On September 26, 2018, the trial court issued a judgment entry finding the decision of the STRB was not supported by "some

evidence." (Decision & Entry at 18.) Specifically, the trial court found physicians' opinions on appellee's mental health were irrelevant to whether appellee remained disabled for her voice disorder, and, regardless, Dr. Steinberg's opinion did not support termination of her benefits. Regarding Dr. O'Brien, the trial court found his opinion could not be considered on appeal at all since STRB failed to return the record, including Dr. O'Brien's report, for review and recommendation by the medical review board, "as required by [Ohio Adm.Code 3307:1-7-05(B)(5)(e)]" and in accordance with R.C. 3307.62(E) and Ohio Adm.Code 3307:1-7-02(A). (Decision & Entry at 16.) Therefore, the trial court "disregard[ed] Dr. O'Brien's opinion and accord[ed] it no weight." (Decision & Entry at 16.)

{¶ 20} Finally, regarding Dr. Forrest, the trial court found "neither a marked objective change in [appellee's] vocal cord condition nor * * * a substantive change in Dr. Forrest's opinion from the time the disability claim was granted and when it was terminated." (Decision & Entry at 16.) Therefore, under *State ex rel. Castle v. State Teachers Retirement Sys.*, 10th Dist. No. 15AP-845, 2016-Ohio-1245, ¶ 51, the trial court found STRB was not permitted to rely on Dr. Forrest's report: a medical opinion it previously found unpersuasive. The trial court, in a footnote, additionally found the March 20, 2017 letters from Drs. Cooperman and Allen (setting forth the "unanimous" opinion that appellee was no longer disabled) "inaccurate" in stating there was no objective basis for appellee's hoarseness and throat pain and no objective findings that would prevent appellee from teaching. (Decision & Entry at 18.) As a result, the trial court found the STRB abused its discretion and granted the writ.

{¶ 21} Appellant filed a timely appeal.[1]

## II. ASSIGNMENT OF ERROR

{¶ 22} STRB assigns the following as trial court error:

> The Court of Common Pleas erred in substituting its judgment for that of the State Teachers Retirement System of Ohio ("STRS") Board. The Court of Common Pleas erred in not finding some evidence to support the STRS Board's determination that Teresa Ewart was no longer disabled.

---

[1] The trial court ordered the writ of mandamus stayed pending appeal.

## III.  STANDARD OF REVIEW

{¶ 23}  By statute, "the determination of whether a member of [STRS] is entitled to disability retirement benefits is solely within the province of the [STRB]." *State ex rel. Hulls v. State Teachers Retirement Bd.*, 113 Ohio St.3d 438, 2007-Ohio-2337, ¶ 26. *State ex rel. Kelly v. State Teachers Retirement Sys. of Ohio*, 10th Dist. No. 11AP-527, 2012-Ohio-4613, ¶ 9 ("The board is deemed to know what a teaching job entails and whether the recipient is disabled from it.").  "Because the [STRB] decision is not appealable, mandamus is available to correct an abuse of discretion by the board in its determination concerning disability-retirement benefits."  *State ex rel. Hulls* at ¶ 27.  "An abuse of discretion occurs when a decision is unreasonable, arbitrary, or unconscionable."  *State ex rel. Altman-Bates v. Pub. Emps. Retirement Bd.*, 148 Ohio St.3d 21, 2016-Ohio-3100, ¶ 22.

{¶ 24}  "A relator seeking a writ of mandamus must establish a clear legal right to the relief sought, a clear legal duty on the part of the respondent to perform the requested act, and the lack of an adequate remedy in the ordinary course of law."  *State ex rel. Riddell v. State Teachers Retirement Bd.*, 10th Dist. No. 13AP-660, 2014-Ohio-1646, ¶ 20. "Generally, a clear legal right exists where an administrative agency abuses its discretion by entering an order not supported by any evidence on the record; however, when the record contains some evidence to support a board's decision, there has been no abuse of discretion, and mandamus will not lie."  *Id.  State ex rel. Altman-Bates* at ¶ 22 ("The board has not abused its discretion if there is 'some evidence' to support its determination.").

{¶ 25}  The trial court's determination to grant or deny a writ of mandamus is reviewed on appeal for an abuse of discretion.  *State ex rel. Altman-Bates* at ¶ 23; *Greene Cty. Dept. of Job & Family Servs. v. Ohio Pub. Emps. Retirement Sys.,* 10th Dist. No. 07AP-421, 2008-Ohio-642, ¶ 13.

## IV.  LEGAL ANALYSIS

### A.  STRB's Assignment of Error

{¶ 26}  STRB contends the trial court erred in substituting its judgment for the STRB and not finding some evidence to support the STRB's determination that appellee was no longer disabled, the predicate for the board's decision to terminate her disability benefits. Specifically, STRB argues that the examinations and reports of Drs. Forrest, Steinberg, and O'Brien, and the reviews of Drs. Hutzler and Allen are some evidence to support the

decision of the STRB. For the following reasons, we find the trial court erred in failing to consider the report of Dr. O'Brien and the file reviews of Drs. Hutzler and Allen in making its determination of whether the STRB abused its discretion in terminating appellee's disability benefits.

### 1. STRS Disability Benefits

{¶ 27} The legislature established in Revised Code Chapter 3307 a retirement system for public school teachers with funds for payment of retirement allowances and other benefits, and placed the system under the management of STRB. R.C. 3307.03. Disability benefits are available for "[m]embers of STRS who are unable to perform their duties for at least 12 months from receipt of their completed application because of a physical or mental condition." *State ex rel. Castle,* 2016-Ohio-1245, at ¶ 50, citing R.C. 3307.62(C). Initial eligibility for disability benefits is governed by R.C. 3307.62. After an application for benefits is submitted, "an independent medical examiner will evaluate the applicant and prepare a report for STRB." *State ex rel. Menz v. State Teachers Retirement Bd.*, 144 Ohio St.3d 26, 2015-Ohio-2337, ¶ 3, citing R.C. 3307.62(C). "If the independent examiner determines that an applicant is disabled and STRB agrees, STRB will grant the application. * * * If, on the other hand, the independent examiner finds that the applicant is not disabled, the application and records will be reviewed by three independent physicians on a medical review board designated by STRB." *State ex rel. Menz* at ¶ 3, citing Ohio Adm.Code 3307:1-7-02; 3307:1-7-01(F); and R.C. 3307.62(E).

{¶ 28} After granting an application for benefits, STRS retains the ability to terminate the benefits at a later time. R.C. 3307.48(C)[2]; *State ex rel. Castle* at ¶ 51. "Termination of disability benefits is governed by a different standard than that for an initial determination of disability." *Id.* Pursuant to R.C. 3307.48(C), STRB may require any disability benefit recipient to submit to an annual medical examination by a physician selected by the board or may require additional examinations if the board's physician determines that additional information should be obtained. The examiner is charged with "report[ing] to [STRB] whether the disability benefit recipient is no longer incapable of resuming the service from which the recipient was found disabled." R.C. 3307.48(C). If the examiner determines the disability recipient is no longer incapable of resuming service,

---

[2] R.C. 3307.48 was formerly R.C. 3307.64.

STRB "shall appoint a medical review board composed of at least three disinterested physicians to evaluate the examiner's report." R.C. 3307.48(C). The STRS medical review board must report its findings to STRB, and, if the STRB concurs in a finding made by the medical review board that the disability recipient is no longer incapable, the board shall terminate the benefit. R.C. 3307.48(C). "The determination of whether a member is entitled to the continued receipt of disability retirement benefits * * * must be based on a medical examination and pertinent medical evidence." *State ex rel. Castle* at ¶ 52. In order to terminate a disability benefit, there must be new evidence in the record that a recipient is no longer incapable of resuming the service from which the recipient was found disabled. *State ex rel. Bryan v. State Teachers Retirement Sys. Bd. of Ohio*, 10th Dist. No. 15AP-1004, 2016-Ohio-5802, ¶ 18, citing *State ex rel. Castle* at ¶ 53.

{¶ 29} Under R.C. 3307.48(C), STRB must provide the disability recipient notice of the STRS medical review board's order to terminate benefits. The recipient may appeal the order, and the procedure for appeal of any denial or termination of disability benefits by STRB is provided in Ohio Adm.Code 3307:1-7-05. Foremost, the appeal must be based on "additional medical evidence" that was not previously considered by the independent medical examiner or the medical review board. Ohio Adm.Code 3307:1-7-05(B)(2). An appeal hearing is scheduled and conducted by STRB or its designees, where the recipient may appear in person. Ohio Adm.Code 3307:1-7-05(B)(3), (B)(5). "Upon consideration of the record on appeal and the information, positions, contentions and arguments of the applicant or recipient, [STRB] or its designee may request additional medical evidence or direct further examination or testing by independent medical examiners and may return a record for review and recommendation by the medical review board." Ohio Adm.Code 3307:1-7-05(B)(5)(e).[3] When the STRB is satisfied that the record before it is complete and has completed its deliberations, it may affirm, disaffirm, or modify its prior action by a majority vote. Ohio Adm.Code 3307:1-7-05(B)(5)(f).

### 2. Dr. Forrest

{¶ 30} STRB argues that the examinations and reports of Dr. Forrest are some evidence to support the decision of the STRS medical review board. STRB notes that all three of Dr. Forrest's reports found appellee's degree of pain and voice was disproportionate

---

[3] Formerly Ohio Adm.Code 3307:1-7-05(B)(5)(f).

to the physical findings, and, when he was asked to state an opinion solely from an ENT perspective, found appellee to not be disabled and that disability benefits should not be continued. STRB emphasizes that Dr. Forrest properly clarified his opinion, and stated that, upon medical exam, there is no evidence that appellee cannot return to teaching.

{¶ 31} Appellee counters that Dr. Forrest's opinions are equivocal, contradictory, ambiguous and, as such, lack probative value. Appellee also argues the trial court correctly held that there was no marked changes in either appellee's condition or Dr. Forrest's opinions from the time the disability claim was granted and when it was terminated, meaning none of Dr. Forrest's opinions rest on new evidence that appellee is not physically disabled.

{¶ 32} In *State ex rel. Castle*, STRB granted, then later terminated an STRS member's disability benefits. After reviewing the entire body of evidence in the record and determining some evidence supported STRB's determination, the trial court denied the member's request for a writ of mandamus. This court reversed the decision of the trial court on appeal. In doing so, we determined that the "termination statute indicates that there must be new evidence in the record that a recipient is no longer physically and mentally disabled in order to terminate a disability benefit. Terminating a recipient's benefits in the absence of such evidence would constitute an abuse of discretion." *Id.* at ¶ 53. We explained, "it would be inconsistent for the STRB to reject earlier reports at the disability determination phase that Castle was not disabled, only to turn around and rely on those same reports for purposes of termination." *Id.* at ¶ 62. Thus, we held, on the facts of that case, the trial court erred by "impermissibly relied upon medical reports that STRB had earlier found unpersuasive." *Id.* at ¶ 60.[4]

{¶ 33} Here, although upon reexamining appellee, Dr. Forrest submitted new reports regarding appellee's condition, we agree with the trial court that his physical findings upon examination and opinion of disability did not change materially from his findings and opinion prior to STRB granting disability benefits. STRB choose to not rely on Dr. Forrest's position in granting benefits. Considering our reasoning in *State ex. rel. Castle* and the similarity in findings throughout the span of Dr. Forrest's reports, we cannot

---

[4] We noted the opinion should not be construed as interfering with STRB's authority to make future determinations of whether disability benefits should continue.

say the trial court abused its discretion in finding the reports and opinion of Dr. Forrest do not constitute some evidence to support termination in this case.

### 3. Dr. Steinberg

{¶ 34} STRB next argues that the examinations and reports of Dr. Steinberg are some evidence to support the decision of the STRB to terminate appellee's benefits. STRB contends the trial court erred in determining physicians' opinions related to appellee's mental health were irrelevant, and points to certain findings in Dr. Steinberg's reports as evidence appellee is not disabled.

{¶ 35} Pursuant to R.C. 3307.48(C), an independent medical examiner's report is relevant to the extent it bears on "whether the disability benefit recipient is no longer incapable of resuming the service from which the recipient was found disabled." As a preliminary issue, STRB did not provide legal authority regarding the relevance of a physician's opinion on a disability recipient's mental health in cases where benefits were not initially granted on a mental health condition. As such, STRB has not met its burden of demonstrating error on appeal in this regard. *Miller v. Johnson & Angelo,* 10th Dist. No. 01AP-1210, 2002-Ohio-3681, ¶ 2 ("[t]he burden of affirmatively demonstrating error on appeal rests with the [appellant]"); App.R. 16(A)(7).

{¶ 36} Regardless, on the record of this case, we do not find reversible error in regard to Dr. Steinberg. Dr. Steinberg determined appellee suffered from moderate depressive symptoms, and thereafter expressed his opinion and certification that, on a psychological basis alone, appellee was not disabled and could work. However, appellee was not granted disability based on her depressive disorder or a mental condition of any kind. Moreover, while STRB cites certain findings of Dr. Steinberg, such as appellee failing one symptom validity test and having an elevated score concerning somatic issues and malingering,[5] STRB does not explain how such findings support termination in this case. We decline to create such an argument on STRB's behalf. *McKahan v. CSX Transp., Inc.*, 10th Dist. No. 09AP-376, 2009-Ohio-5359, ¶ 10 (noting that it is not the duty of an appellate court to

---

[5] We note that Dr. Steinberg specifically found that appellee's pain issues were not of somatic origins, an opinion shared by Dr. Brinkman-Sull. We further note, based on the March 20, 2017 letter of Dr. Allen, members of the STRS medical review board discussed but did not base its recommendation to terminate benefits based on somatic issues. Instead, Dr. Allen concluded appellee has chronic pain syndrome; STRB does not provide any argument as to how Dr. Steinberg's report would support termination in this respect.

create an argument on an appellant's behalf). On this record, we find appellant has not demonstrated the trial court abused its discretion in finding Dr. Steinberg's opinion to be irrelevant and in finding in the alternative that Dr. Steinberg's report does not support termination of benefits.

### 4. Dr. O'Brien

{¶ 37} STRB contends the trial court erred in finding the report and opinion of Dr. O'Brien are not some evidence on which STRB could rely to terminate benefits based. As a preliminary issue, STRB did not include in its brief to the trial court an argument pertaining to Dr. O'Brien. Typically, if an appellant did not raise a particular issue to the trial court, we decline to address this issue for the first time on appeal. *Tucker v. Leadership Academy for Math*, 10th Dist. No. 14AP-100, 2014-Ohio-3307, ¶ 20; *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, ¶ 18. However, in this case, appellee raised the issue of the report of Dr. O'Brien as some evidence in its brief to the trial court, and the trial court addressed the issue in its opinion. Both parties have fully briefed this issue on appeal. As a result, we will proceed to consider whether the trial court properly disregarded the report of Dr. O'Brien due to a procedural defect by STRB in failing to return his opinion to the STRS medical review board.

{¶ 38} Statutory interpretation presents a question of law reviewed de novo on appeal. *Minges v. Ohio Dept. of Agriculture*, 10th Dist. No. 12AP-738, 2013-Ohio-1808, ¶ 13. " 'In construing a statute, our paramount concern is legislative intent.' " *State ex rel. Hulls*, 113 Ohio St.3d 438, 2007-Ohio-2337, at ¶ 32, quoting *State ex rel. Musial v. N. Olmsted*, 106 Ohio St.3d 459, 2005-Ohio-5521, ¶ 23. " 'Determining this intent requires us to read words and phrases in context and construe them in accordance with rules of grammar and common usage.' " *Id.*, quoting *State ex rel. Russell v. Thornton*, 111 Ohio St.3d 409, 2006-Ohio-5858, ¶ 11.

{¶ 39} Likewise, "[w]hen ascertaining the meaning of administrative rules and regulations having the effect of legislative enactment, we apply rules of statutory construction." *Burroughs v. Ohio Dept. of Adm. Servs.*, 10th Dist. No. 12AP-522, 2013-Ohio-3261, ¶ 31. "Ordinarily, courts accord deference to an agency's interpretation of rules that the agency is required to administer." *Minges* at ¶ 16. "However, if an agency's interpretation is unreasonable, then courts need not defer to that interpretation." *Id. State*

*ex rel. Hulls* at ¶ 39, quoting *State ex rel. Celebrezze v. Natl. Lime & Stone Co.*, 68 Ohio St.3d 377, 382 (1994) (" '[A]n administrative rule that is issued pursuant to statutory authority has the force of law unless it is unreasonable or conflicts with a statute covering the same subject matter.' ").

{¶ 40} Here, the trial court determined that while the administrative code does allow additional independent medical examination following the review of an appeal, STRB errantly failed to return the records for review and recommendation by the STRS medical review board. Therefore, the trial court found the opinion of Dr. O'Brien "could not be considered on hearing [appellee's] appeal" and was to be "disregard[ed]."[6] (Decision & Entry at 16.) The trial court cited to Ohio Adm.Code 3307:1-7-05(B)(5)(e), 3307:1-7-02(A), and R.C. 3307.62(E) in support of its determination.

{¶ 41} STRB argues the trial court incorrectly determined that Dr. O'Brien's report should have been evaluated by a medical review board under the statutory and administrative scheme, and that R.C. 3307.62(E) states the procedure to be followed after a member applies for disability benefits, not the procedures to be followed after the STRB terminates disability benefits. Appellee counters that the trial court's determination was correct since "member" as used in R.C. 3307.62(E) is defined in 3307.01(C) to include both members applying for disability benefits and members who are current disability benefit recipients. For the following reasons, we agree with STRB that within the context of an appeal pursuant to Ohio Adm.Code 3307:1-7-05(B)(5)(e), STRB is permitted, but not required, to submit the report of independent medical examiner to a medical review board.

{¶ 42} The statutory scheme in place governing STRS disability benefits requires STRB to have the report of an independent medical examiner reviewed by a medical review board at certain points in the process of evaluating whether members initially qualify for a disability benefit as well as in terminating payment to a disability benefit recipient. *See* R.C. 3307.62(E) and 3307.48(C). R.C. 3307.62 generally addresses eligibility for disability benefits, setting forth the process for a STRS member to apply for disability benefits, the process of medical evaluation by a physician appointed by STRB, and review of the

---

[6] As a result, the trial court did not address appellee's argument that Dr. O'Brien's report was internally inconsistent and equivocal.

application by STRB.  R.C. 3307.62(B) through (E); *State ex rel. Menz*, 144 Ohio St.3d 26, 2015-Ohio-2337, at ¶ 3.  R.C. 3307.62(E) states:

> If the physician or physicians determine that the member qualifies for a disability benefit, the board concurs with the determination, and the member agrees to medical treatment as specified in division (G) of this section, the member shall receive a disability benefit * * *. If such physician or physicians determine that the member does not qualify for a disability benefit, the report of the examiner or examiners shall be evaluated by a board of medical review composed of at least three physicians appointed by the retirement board.

In other words, "[i]f * * * the independent examiner finds that the applicant is not disabled, the application and records will be reviewed by three independent physicians on a medical review board designated by STRB."  *State ex rel. Menz* at ¶ 3, citing R.C. 3307.62(E); Ohio Adm.Code 3307:1-7-01(F) and 3307:1-7-02.  Likewise, under the separate standard governing termination of disability benefits, a medical review board is required to review the finding of an independent medical examiner that a disability benefit recipient is no longer incapable of resuming the service from which the recipient was found disabled.  R.C. 3307.48(C).

{¶ 43} The general requirement of having a medical review board review an independent medical examiner's conclusion that a member is not incapacitated from their professional duties is reflected in Ohio Adm.Code 3307:1-7-02, which outlines the role of the medical review board.  Ohio Adm.Code 3307:1-7-02(A)(4) states:

> If the chair reviews the conclusions of the independent medical examiners and concludes that an applicant or recipient is not incapacitated from the performance of regular duties or will not remain incapacitated for at least twelve months, the chair shall convene a panel of three or more members of the medical review board who shall review the application, medical evidence, and reports of the independent medical examiners. The panel may request medical evidence or obtain such further examinations and tests as it may deem necessary and appropriate and may direct delay of consideration of an application for treatment.

{¶ 44} After the medical review board reviews the report of the medical examiner and reports to STRB, STRB must render an order regarding the disability benefit.  R.C. 3307.62(F); R.C. 3307.48(C).  In each case, either after an initial application has been

denied or an existing disability benefit payment is terminated, the member has the right to a hearing or appeal on the STRB order.  R.C. 3307.62(F), 3307.48(C), and Ohio Adm.Code 3307:1-7-02(A)(6). *State ex rel. Menz* at ¶ 3.

{¶ 45} Ohio Adm.Code 3307:1-7-05 governs the procedure to appeal "any denial or termination of disability benefits by [STRB] following an independent medical examination by [STRS]."  Ohio Adm.Code 3307:1-7-05(B)(5)(e) states that after the applicant or recipient submits additional medical evidence and a hearing is conducted,

> [u]pon consideration of the record on appeal and the information, positions, contentions and arguments of the applicant or recipient, [STRB] or its designee may request additional medical evidence or direct further examination or testing by independent medical examiners and *may* return a record for review and recommendation by the medical review board.

(Emphasis added.)

{¶ 46} Here, it is undisputed that STRB followed the proper procedures under R.C. 3307.48 to issue an order terminating appellee's disability benefits, and that appellee then instigated an appeal under Ohio Adm.Code 3307:1-7-05(B)(5)(e). Neither the trial court nor appellee contends this section of the administrative code was promulgated without statutory authority.  STRB contends it has no duty to return the record to a medical review board after a disability benefit has been terminated and is on appeal under Ohio Adm.Code 3307:1-7-05(B)(5)(e).

{¶ 47} "[T]he word 'may' is generally construed to make the provision in which it is contained optional, permissive, or discretionary." *Dorrian v. Scioto Conservancy Dist.*, 27 Ohio St.2d 102, 107 (1971).  Furthermore, in setting forth the statutory and administrative scheme for STRS disability benefits,  the Supreme Court of Ohio in *State ex rel. Menz* did not state such a requirement during an Ohio Adm.Code 3307:1-7-05 appeal.  Rather, the Supreme Court stated, "STRB may require the medical review board to participate in the evaluation of the evidence and make a recommendation" in an appeal under Ohio Adm.Code 3307:1-7-05(B)(5)(e).  *State ex rel. Menz* at ¶ 3. *See also Ohio ex rel. Kelly*, 2012-Ohio-4613, ¶ 7.

{¶ 48} STRB's position on Ohio Adm.Code 3307:1-7-05(B)(5)(e) does not set up a conflict with R.C. 3307.62 or seem otherwise unreasonable.  As indicated in the review of

the statutory scheme above, STRB is required to have the report of an independent medical examiner reviewed by a medical review board at certain points in the process of evaluating whether members initially qualify for a disability benefit as well as in terminating payment to an existing disability benefit recipient. *See* R.C. 3307.62(E) and 3307.48(C). However, we find nothing in those statutes or Ohio Adm.Code 3307:1-7-02 to require the report of an independent medical examiner to be reviewed by a medical review board after STRB has rendered an order terminating disability benefits and the recipient instigates an administrative appeal under Ohio Adm.Code 3307:1-7-05(B)(5)(e).

{¶ 49} Considering all of the above, we find the plain language of Ohio Adm.Code 3307:1-7-05(B)(5)(e) permits but does not require STRB to return the record for review and recommendation by the STRS medical review board. Therefore, we find the trial court improperly disregarded the opinion of Dr. O'Brien. We remand the matter to the trial court to make the determination, in the first instance, of whether Dr. O'Brien's report constitutes some evidence to support the STRB decision to terminate appellee's disability benefits.

### 5. File reviews conducted by Drs. Hutzler and Allen

{¶ 50} STRB contends that the file reviews conducted by Drs. Hutzler and Allen, and subsequent opinions stated in their letters of March 7 and 8, 2017, constitute some evidence to support STRB's determination to terminate appellee's disability benefits. The Supreme Court of Ohio in *State ex rel. Wegman v. Ohio Police & Fire Pension Fund*, 155 Ohio St.3d 223, 2018-Ohio-4243, ¶ 18 sets forth the general rules regarding file reviews as evidence as follows:

> [A] medical expert's file review can constitute "some evidence" supporting the denial of disability compensation. *State ex rel. Starr v. Indus. Comm.*, 114 Ohio St.3d 449, 2007-Ohio-4558, 872 N.E.2d 1227, ¶ 14. * * * [T]he amount of supporting detail that the expert provides in the report goes to the weight and credibility of the expert's ultimate opinion, and the board, not this court, has "the exclusive authority to evaluate the weight and credibility of the medical evidence," [*State ex rel. Kolcinko v. Ohio Police & Fire Pension Fund*, 131 Ohio St.3d 111, 2012-Ohio-46,] ¶ 7. The medical opinion expressed, when drawn from a review of all the evidence, is itself some evidence that the board can rely on in reaching a decision.

{¶ 51} In support of its argument, STRB points to the following portion of Dr. Allen's March 7, 2017 letter: "Based on these reports, I do not find objective evidence of a laryngeal

or psychiatric condition that prevents [appellee] from returning to work."   (Record of Proceedings at 126.)  The reports referenced in the letter are the August 2016 and January 2017 reports of Dr. Forrest and the September 2018 report of Dr. Steinberg.

{¶ 52} STRB additionally points to the following portion of the March 8, 2017 letter from Dr. Hutzler:

> After reviewing this file several time it is my recommendation that [appellee] is capable of resuming regular full-time service similar to that from which she retired and that disability benefits should not be continued. It is my opinion after reviewing this file that her "hoarseness" and "pain" associated with talking is based primarily on a psychiatric disorder. I agree with Dr. Steinberg that she is not disabled in her ability to teach from a psychiatric standpoint.

(Record of Proceedings at 129-30.)  In the letter, Dr. Hutzler references several reports and letters prior to the granting of disability, the May 2016 report of Dr. Bryson, the August 2016 and January 2017 reports of Dr. Forrest, and the September 2018 report of Dr. Steinberg.

{¶ 53} Although STRB raised this argument in its brief to the trial court, the trial court trial did not address whether these letters constitute some evidence to support the determination of STRB to terminate appellee's disability benefits in this case.  As a result, we remand this matter to the trial court to make this determination in the first instance.

{¶ 54} Considering all of the above, we find the trial court did not abuse its discretion in regard to Drs. Forrest and Steinberg.  However, we find the trial court erred in failing to consider the findings and recommendation of Dr. O'Brien and the letters of Drs. Hutzler and Allen in making its determination of whether the STRS medical review board abused its discretion.

{¶ 55} Accordingly, we sustain STRB's assignment of error to the limited extent discussed herein.

## V.  CONCLUSION

{¶ 56} Having sustained STRB's sole assignment of error to the limited extent expressed herein, we reverse the judgment of the Franklin County Court of Common Pleas. We remand the matter to the trial court to consider, in the first instance, whether the opinion of Dr. O'Brien, the March 7, 2017 letter from Dr. Allen, and/or the March 8, 2017

letter from Dr. Hutzler constitute some evidence to support the determination of STRB to terminate appellee's disability benefits.

*Judgment reversed; cause remanded.*

BROWN and LUPER SCHUSTER, JJ., concur.

_____