[Cite as *State ex rel. Hayslip v. State Teachers Ret. Sys. Bd.*, 2021-Ohio-3495.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Gary L. Hayslip, | : | |
| Relator, | : | No. 20AP-64 |
| v. | : | (REGULAR CALENDAR) |
| State Teachers Retirement System Board, | : | |
| | : | |
| Respondent. | : | |
| | : | |

D E C I S I O N

Rendered on September 30, 2021

**On brief:** *Hanna Rasnick Evanchan Palmisano Hobson & Fox, LLC,* and *Scott M. Kolligian,* for relator.

**On brief:** *Dave Yost,* Attorney General, *Samuel A. Peppers III,* Pension Counsel and *Mary Therese J. Bridge,* for respondent.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BEATTY BLUNT, J.

{¶ 1} Relator, Gary L. Hayslip, filed this original action seeking a writ of mandamus ordering respondent, State Teachers Retirement System Board of Ohio ("STRS") to approve his application for disability benefits.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate of this court. The magistrate issued the appended decision, including findings of fact and conclusions of law, recommending that this court deny relator's request for a writ of mandamus.

{¶ 3} Relator has filed timely objections to the magistrate's decision, and the case

has now been submitted for ruling. The relator argues that the magistrate's finding that STRS did not act in an unreasonable, arbitrary, or unconscionable matter was not supported by the record, and specifically argues that the magistrate's finding that "the actual job duties described by the employer, which were not contradicted by any evidence in the record, are the substantive standard in this case and supersede any formal classification as 'light duty' or 'sedentary duty' for purposes of ascertaining disability" was unsupported and contradicted by the evidence in the record.   (Mag's. Decision at 16.) Relator contends that because Dr. James Kleja, M.D. determined that he "can perform sedentary level job duties" and because vocational specialist Brett Salkin indicated that all teaching positions are "light-duty" work, that there is no evidence in the record to support respondents denial of benefits on the basis that relator was capable of performing the duties of a substitute teacher.

{¶ 4}    Mandamus is available as remedy to correct an abuse in determining benefits eligibility by a state retirement fund. *State ex rel. Sales v. Ohio Pub. Emps. Retirement Bd.*, 156 Ohio St.3d 433, 2019-Ohio-1568, ¶ 6. A relator seeking a writ of mandamus to a pension board must establish a clear legal right to the relief sought, a clear legal duty on the part of the respondent to perform the requested act, and the lack of an adequate remedy at law. *State ex rel. Riddell v. State Teachers Retirement Bd.*, 10th Dist. No. 13AP-660, 2014-Ohio-1646, ¶ 20. "Because the final retirement-board decision is not appealable, mandamus is available to correct an abuse of discretion by the board in its determination concerning disability-retirement benefits." *State ex rel. Hulls v. State Teachers Retirement Bd.*, 113 Ohio St.3d 438, 2007-Ohio-2337, ¶ 27. There is an abuse of discretion only if STRS acts in a manner that is unreasonable, arbitrary, or unconscionable. *State ex rel. Pipoly v. State Teachers Retirement Sys.*, 95 Ohio St.3d 327, 2002-Ohio-2219, ¶ 14. STRS abuses its discretion when it enters an order that is not supported by at least "some evidence." *State ex rel. Marchiano v. School Emps. Retirement Sys.*, 121 Ohio St.3d 139, 2009-Ohio-307, ¶ 20-21, citing *State ex rel. Grein v. Ohio State Hwy. Patrol Retirement Sys.*, 116 Ohio St.3d 344, 2007-Ohio-6667, ¶ 9. The presence of contrary evidence is not dispositive, so long as the "some evidence" standard has been met. *State ex rel. Am. Std., Inc. v. Boehler*, 99 Ohio St.3d 39, 2003-Ohio-2457, ¶ 29. Mandamus will lie only if the board's decision is not supported by any evidence. *State ex rel. Woodman v. Ohio Pub. Emps. Retirement Sys.*, 144 Ohio St.3d 367, 2015-Ohio-3807, ¶ 17.

{¶ 5}   Relator was examined by Dr. Kleja, M.D. on November 16, 2018, and Dr. Kleja's report specifically reiterates relator's generalized statement of complaint that "he can stand and walk for 20 or 30 minutes at a time and sit for 20 or 30 minutes at a time before the pain becomes severe * * *." (Stipulated Record at 52.) Dr. Kleja examined relator and reviewed the medical reports of the experts that relator had submitted with his disability application. Overall, Dr. Kleja concluded that relator displayed "moderate to severe pain behavior that is out of proportion to physical exam findings," *id.* at 54, and specifically observed: (1) that "there is no evidence on physical examination today of cervical radiculopathy and he has a normal strength in the upper limbs," (2) that relator had "tenderness over his ankles with multiple tendon issues noted on [the] MRI of his right ankle, but [they] appear to be chronic or old and not functionally limiting," (3) that relator's low back pain and osteoarthritis of the knees could be alleviated and that neither condition would "prevent him from performing the essential job duties of a substitute teacher" since "he can change positions frequently," and that (4) relator's "*functional capacity evaluation confirmed* [*that*] *he can perform sedentary level job duties which would allow him therefore to perform the task of a substitute teacher.*" *Id.* at 55 (Emphasis added.) Dr. Kleja's opinion and recommendation was that relator "can perform the essential duties of his job of a substitute teacher and therefore should not be medically retired," *id.,* and also that relator "was not physically or mentally incapacitated from his or her job duties for 12 continuous months from the application date." (Mag's Decision at ¶ 17, citing Stipulated Record at 56.)

{¶ 6}   On review, we reject relator's argument and overrule relator's objections to the magistrate's decision. Dr. Kleja's report constitutes "some evidence" supporting the STRS order denying benefits. *See State ex rel. Marchiano*, 2009-Ohio-307, ¶ 20-21, and *State ex rel. Grein*, 2007-Ohio-6667, ¶ 9. Accordingly, the fact that there is contrary evidence that technically classifies teaching as "light duty" rather than "sedentary duty" is not dispositive in this case, as the "some evidence" standard has been met. *See State ex rel. Am. Std., Inc.*, 2003-Ohio-2457, ¶ 29. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and the conclusions of law therein. In accordance with the magistrate's decision, we conclude that the commission properly exercised its jurisdiction, and did not abuse its discretion in denying relator's request for benefits.

Relator's requested writ of mandamus is accordingly denied.

*Writ of mandamus denied.*

DORRIAN, P.J., concurs in judgment only.
MENTEL, J., concur.
_____

APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Gary L. Hayslip, | : | |
| Relator, | : | |
| v. | : | No. 20AP-64 |
| State Teachers Retirement System Board, | : | (REGULAR CALENDAR) |
| Respondent. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on March 30, 2021

*Hanna Rasnick Evanchan Palmisano Hobson & Fox, LLC,* and *Scott M. Kolligian,* for relator.

*Dave Yost,* Attorney General, *Samuel A. Peppers III,* and *Mary Therese J. Bridge,* for respondent.

IN MANDAMUS

**{¶ 7}** Relator, Gary L. Hayslip, seeks a writ of mandamus ordering respondent, State Teachers Retirement System Board ("STRS" or "board" as appropriate) to vacate its order denying relator's application for disability benefits, and enter an order granting such benefits, including retroactive benefits payable from the time of application.

Findings of Fact:

**{¶ 8}** 1. STRS is a state agency established and governed under statutes set forth in Chapter 3307 of the Ohio Revised Code.

**{¶ 9}** 2. The board oversees STRS and issues final decisions on disability benefit eligibility. R.C. 3307.04; R.C. 3307.62.

{¶ 10}  3.  Hayslip worked for Akron Public Schools as a substitute teacher, and was an eligible participant in STRS, as defined by R.C. 3307.01(C).

{¶ 11}  4.  Hayslip submitted a disability benefit application on September 28, 2018 with supporting documentation.  (Stip. at 8-11.)

{¶ 12}  5. With his disability application, Hayslip attached the STRS "Report by Employer" form supplied by Akron Public Schools, which contains the following job description:

> Description of job duties the applicant last performed:  Delivers daily instruction to assigned students as directed by classroom teacher. Works on different assignments based upon vacancies created by planned or unplanned teacher absences.
>
> Correction fluid/tape used
>
> In what ways does the applicant's performance of duties show probably disability for further service?
>
> Unknown at this time.
>
> Does job require any special working condition or physical demands such as lifting/kneeling? If so, please specify (pounds lifted, frequency of kneeling, use of stairs, etc.).
>
> Standing, sitting, walking, intermittently throughout work day.
>
> Please describe any accommodations made under the Americans with Disabilities Act.
>
> Mr. Hayslip has not requested any accommodations, however, he did resign from his part-time teaching assignment citing increased health problems/issues. His resignation from the part-time position was effective 04/12/2018.

(Stip. at 15.)

{¶ 13}  6.  Hayslip attached the report and recommendation of two of his attending physicians in the Veteran's Administration healthcare system.

{¶ 14}  7. Paul Fantauzzo, D.O., submitted a report and recommendation dated September 4, 2018 supported by numerous treatment records.  (Stip. at 19.)  Dr. Fantauzzo opined that Hayslip was disabled, the disability was expected to last 12 or more months,

and was based on disabling symptoms of neck pain caused by cervical radiculopathy. Dr. Fantauzzo also identified other conditions for which he was treating Hayslip as diabetes melitis, degenerative joint disease of the shoulder, and gastro esophageal reflex disease ("GERD"). (Stip. at 18.) These last conditions were not identified as disabling of themselves. Relying in part on a functional capacity evaluation ("FCE") prepared by physical therapist Christopher Wood, Dr. Fantauzzo concluded that Hayslip was still fit for sedentary job positions. (Stip. at 19.)

Among the treatment notes submitted with Dr. Fantauzzo's report, again relying on the FCE, is the following observation from August 14, 2018:

> I do feel client is capable of sedentary work. However, will require a job he can freely move from sit to stand and avoid any prolonged sitting or standing. He does not need to lay down during the course of the work shift.

(Stip. at 26.)

{¶ 15} 8. Attached to Dr. Fantauzzo's report is a prescription form dated August 14, 2018, stating as follows: "Mr. Hayslip, due to medical condition, should only be allowed to work three days weekly." (Stip. at 16.)

{¶ 16} 9. Dr. Fantauzzo also relied on an MRI report from April 2, 2018 included with physical therapist Wood's FCE. (Stip. at 31.) This MRI examined Hayslip's ankles and produced the following result:

> Impression:
>
> [One] 1 commission oval bone fragment at the distal border of the right fibula anteriorly-probably old posttraumatic in nature. No osteochondral lesions seen. No definite osteonecrosis, stress fracture, acute displaced fracture or dislocation seen.
>
> [Two] Probable old ATFL tear and at least old mild injuries of the remaining ankle ligaments although superimposed acute to subacute injuries cannot be excluded-particularly involving the ligaments within the sinus tarsi.
>
> [Three] At least mild diffuse right Achilles tendinosis with at least mild subacute to old partial-thickness tearing of the deep and intrasubstance fibers of the distal Achilles tendon along the calcaneus insertion site.

> [Four] Old partial thickness tear of the right flexor hallucis longus musculotendinous junction and proximal tendon suggested. Peroneus bravis tendinosis-if not longitudinal splitting of fibers.

(Stip. at 32-33.)

{¶ 17} 10. Johnny Alayon, DPM, provided the second attending physician report. Dr. Alayon relied on MRIs, x-rays, and EMGs to conclude that the primary medical condition of ankle pain was disabling and expected to last at least 12 months or more. Dr. Alayon' s report was supported by his own progress reports, and a radiology report. Dr. Alayon described Hayslip's disabling symptoms as bilateral ankle pain and neuralgia. He described in his notes documented crepitus of the left ankle, unequal leg strength, bilateral anterior and medial ankle pain, and positive Tinel's signs. (Stip. at 38-39.)

{¶ 18} 11. Although Dr. Alayon as a podiatrist furnished an opinion only regarding the disabling condition of ankle pain, in the record here, his report is supported by treatment notes from other providers describing Hayslip's other conditions.

{¶ 19} 12. Regarding Hayslip's shoulder complaints, a radiology report dated September 17, 2018 prepared by Radiologist Craig George found the following:

> There is degenerative change at the acromioclavicular joint. This may contribute to impingement syndrome. The glenohumeral joint is maintained. There is no fracture, bony erosion, or soft tissue calcification.

(Stip. at 40.)

{¶ 20} 13. An additional MRI of Hayslip's cervical spine revealed mild degenerative changes with a C5-C6 disc protrusion, central canal narrowing, and mild chord compression. Similar results at C6-C7 and mild left foraminal narrowing at the C3-C4 level. (Stip. at 64-65.) A lumbar MRI revealed similar results. (Stip. at 148.)

{¶ 21} 14. Hayslip received epidural injections in his cervical spine and pursued chiropractic treatment for neck and low back pain. (Stip. at 48, 81.)

{¶ 22} 15. X-rays of Hayslip's knees show advanced osteoarthritis and bone-on-bone occurrence. (Stip. at 66.) Hayslip's treating physicians with the Veteran's Administration acknowledged the necessity of total knee replacement but refused the surgery because of Hayslip's morbid obesity.

{¶ 23} 16. STRS acknowledged Hayslip's disability application by letter dated October 9, 2018. This outlined the initial review of his application as follows:

> Your application included Attending Physician's Reports from Drs. Alayon and Fantauzzo. Examinations for determining eligibility for disability benefits will be assigned by the Medical Review Board only for the conditions listed as permanently disabling and supported with medical evidence by your physician(s). Your attending physician(s) provided support for the following conditions, cervical radiculopathy and ankle pain, to be processed.

(Stip. at 171.)

{¶ 24} 17. Hayslip was examined by James Klejka, M.D., on behalf of STRS on November 16, 2018. (Stip. at 51-55.) Dr. Klejka's report included a physical examination and a review of Hayslip's medical records and job description. Dr. Klejka described Hayslip's complaints as bilateral ankle pain with foot numbness and tingling, chronic low back pain, chronic neck pain, chronic bilateral shoulder pain, bilateral hand numbness and tingling due to carpal tunnel syndrome. (Stip. at 52.) Dr. Klejka questioned Hayslip's self-reported pain: "He is a pleasant male with moderate to severe pain behavior that is out of proportion to physical exam findings. He continually groans even when at rest with grunts and groans with any movement of any body part." (Stip. at 54.) After reviewing the previous FCE reported by Dr. Fantauzzo, Dr. Klejka noted the therapist's inconsistencies in testing: "Specifically, on Jamar grip testing the patient can grip only 7 pounds on the right and 1.5 pounds on left but during functional capacity evaluation could hold a 10 pound box without dropping it." (Stip. at 54.) Based on his own examination, Dr. Klejka observed:

> There is no evidence on physical examination today of a cervical radiculopathy and he has a normal strength in the upper limbs. Although he also complains of bilateral shoulder pain, x-rays reveal only mild degenerative changes of the acromioclavicular joints bilaterally. This does not appear to be functioning disabling.

(Stip. at 55.)

> Dr. Klejka acknowledged Hayslip's ankle symptoms:

> Clinically, he does have [illegible] and tenderness over his ankles with multiple tendon issues noted on MRI of his right ankle that appear to be chronic or old and not functionally

> limiting. While his arthritis may be a painful condition, his current job as a substitute teacher allows him to change position from standing to sitting frequently. Per the patient's report he can stand for 20-30 minutes at a time and it therefore does not prevent him from performing his job duties.

(Stip. at 55.)

{¶ 25} Dr. Klejka further concluded that Hayslip's chronic low back pain and osteoarthritis in his knees did not prevent him from functioning as a substitute teacher, because the job description permitted frequent changes from sitting to standing position. Overall, Dr. Klejka reported:

> His behavior today suggests significant symptom magnification making it difficult to gauge the veracity of his history and subjective complaints. Furthermore, his functional capacity evaluation confirmed he can perform sedentary level job duties which would allow him therefore to perform the task of a substitute teacher.

(Stip. at 55.)

Dr. Klejka ultimately concluded that Hayslip was not physically or mentally incapacitated from his job duties for 12 continuous months from the application date. (Stip. at 56.)

{¶ 26} 18. Three members of the STRS Medical Review Board independently reviewed Hayslip's records and Dr. Klejka's report and produced individual recommendations. Claire V. Wolfe, M.D., summarized Hayslip's medical records and noted test observations indicating magnification of symptoms including "widespread non-anatomic tenderness & pain on simulated rotation." (Stip. at 58.) Dr. Wolfe concluded that x-rays of Hayslip's shoulders and ankles found only mild changes in the affected joints and ligaments. (Stip. at 58.) Dr. Wolfe concluded that Hayslip had "very little objective abnormality" and "[a]lthough he probably does have carpal tunnel syndrome, it would not preclude teaching: He has no neurologic abnormalities from his neck/back complaints and no significant changes that would suggest diabetic neuropathy of a degree that would impair him from teaching. I find nothing that would preclude Mr. Hayslip from substitute teaching." (Stip. at 58.)

{¶ 27} 19. James Allen, M.D., reached similar conclusions regarding the medical history, and summarized his findings as follows:

> In conclusion, this STRS member has a number of painful conditions including neck and ankle arthritis but an independent medical examiner has determined that none of his conditions preclude him from performing teaching duties. I recommend that the independent medical examiner's report be accepted, and that disability retirement be denied.

(Stip. at 59.)

{¶ 28} 20. Ronald Whisler, M.D., was the third Medical Review Board member to examine Hayslip's records. He similarly concluded that Dr. Klejka had found no evidence on examination of cervical radiculopathy and found normal strength of the upper limbs. (Stip. at 60.) He adopted Dr. Klejka's findings that Hayslip's foot and ankle issues would not be functionally incapacitating, nor would bilateral carpal tunnel syndrome preclude the essential job duties of a substitute teacher. Dr. Whisler summarized as follows:

> In summary, this STRS member has a history of musculoskeletal pain determined by the independent medical examiner not to be incapacitating to perform his duties as a substitute teacher. I recommend that disability retirement be denied.

(Stip. at 60.)

{¶ 29} 21. The STRS Medical Review Board duly produced a recommendation that benefits be denied, expressed in a letter to the board by Martin Gottesman, M.D., dated January 3, 2019. (Stip. at 61.)

{¶ 30} 22. STRS informed relator by letter dated January 3, 2019 of these results and informed him that his case would be presented to the STRS board with the Medical Review Board's negative recommendation. (Stip. at 174.) The board then rejected Hayslip's application for disability benefits at its February 21, 2019 meeting and communicated its decision to Hayslip by letter dated February 22, 2019. (Stip. at 176.)

{¶ 31} 23. Hayslip appealed the board's February 22, 2019 denial of disability benefits with a notice of appeal received by the board on March 7, 2019. (Stip. at 180.)

{¶ 32} 24. To support his appeal, Hayslip submitted additional medical evidence, including a report by Todd Hochman, M.D., an internist. Dr. Hochman conducted a

physical exam of Hayslip and reviewed his prior medical records, opining that Hayslip was restricted to lifting no greater than ten pounds occasionally, medically required the use of a cane for standing or walking, and that Hayslip could sit or stand for three to six hours in a work day, and stand or walk for up to one and one-half hours. (Stip. at 151.) Dr. Hochman concluded that Hayslip was limited to sedentary work. (Stip. at 151.)

{¶ 33} 25. Hayslip obtained an opinion from a vocational specialist, Brett Salkin, for an assessment of whether Hayslip's physical limitations impacted the position of substitute teacher. Salkin opined there were no school teaching positions that could be performed at the sedentary exertional level, and noted that a pertinent reference work, the *Dictionary of Occupational Titles*, defines all teaching positions as light-duty work, not sedentary. (Stip. at 153-54.)

{¶ 34} 26. The additional medical evidence in support of the appeal was again referred to Dr. Klejka, who found nothing to alter his prior assessment of Hayslip's disability. Dr. Klejka again noted the conditions cited in relator's application, chronic neck pain with cervical and disc issues, radicular symptoms, and degenerative ankle conditions of themselves, did not preclude Hayslip's ability to function as a substitute teacher. Dr. Klejka again noted the other health issues, including morbid obesity, knee arthritis, and depression. (Stip. at 160.) Dr. Klejka specified that his opinion was limited to the specific conditions cited in the application for disability:

> Based on the review of the new evidence above, regarding his application for disability based only on cervical radiculopathy and ankle pain, it is my medical opinion that Mr. Hayslip can perform the essential duties of his job as a substitute teacher and therefore he should not be medically retired.

(Stip. at 161.)

{¶ 35} 27. The Medical Review Board again submitted a memorandum from Dr. Gottesman dated September 8, 2019 noting the Medical Review Board's continued recommendation that disability benefits be denied. (Stip. at 162-65.)

{¶ 36} 28. The STRS review panel conducted a hearing on September 18, 2019. The board again denied disability benefits by order dated September 19, 2019. The board stated in its decision as follows:

> Based on the Disability Review Panel's conclusion and review of the entire medical record, on September 19, 2019, it was moved by Ms. Walters, seconded by Mr. Rhodes that the previous position of the Retirement Board be affirmed and that disability benefits be denied.

(Stip. at 2.)

{¶ 37} 29.  Hayslip filed his complaint in mandamus with this court on February 3, 2020.

Discussion and Conclusions of Law:

{¶ 38}  A relator seeking a writ of mandamus addressed to a pension board, as with other administrative agencies, must establish a clear legal right to the relief sought, a clear legal duty on the part of the respondent to perform the requested act, and the lack of an adequate remedy in the ordinary course of law.  *State ex rel. Riddell v. State Teachers Retirement Bd.*, 10th Dist. No. 13AP-660, 2014-Ohio-1646, ¶ 20.

{¶ 39}  By statute, the determination of whether a member is entitled to disability retirement benefits is solely within the province of the STRS board.  *State ex rel. Hulls v. State Teachers Retirement Bd.*, 113 Ohio St.3d 438, 2007-Ohio-2337, ¶ 26; *State ex rel. Kelly v. State Teachers Retirement Sys. of Ohio*, 10th Dist. No. 11AP-527, 2012-Ohio-4613, ¶ 9 ("The board is deemed to know what a teaching job entails and whether the recipient is disabled from it.").  "Because the final retirement-board decision is not appealable, mandamus is available to correct an abuse of discretion by the board in its determination concerning disability-retirement benefits."  *Hulls* at ¶ 27.  "An abuse of discretion occurs when a decision is unreasonable, arbitrary, or unconscionable."  *State ex rel. Altman-Bates v. Pub. Emps. Retirement Bd.*, 148 Ohio St.3d 21, 2016-Ohio-3100, ¶ 22.  "The board has not abused its discretion if there is 'some evidence' to support its determination."  *Id.*; *State ex rel. Kolcinko v. Ohio Police & Fire Pension Fund,* 131 Ohio St.3d 111, 2012-Ohio-46, ¶ 2; *State ex rel. Ewart v. State Teachers Retirement Sys. Bd. of Ohio*, 10th Dist. No. 18AP-826, 2019-Ohio-2459, ¶ 23-24.

{¶ 40}  Members of STRS who are unable to perform their duties for at least 12 months from receipt of their completed application because of a physical or mental condition may apply for disability benefits.  R.C. 3307.62(C).  The STRS board will appoint

a medical review board to address disability applications. Ohio Adm.Code 3307:1-7-02(A)(3). Once an application is submitted, an independent medical examiner will evaluate the applicant and prepare a report for the board. R.C. 3307.62(C). If the independent medical examiner determines the applicant is mentally or physically incapacitated for the performance of duty by a disabling condition, either permanent or presumed to be permanent for 12 continuous months following the filing of an application and the board agrees, STRS will grant the application for disability benefits. Ohio Adm.Code 3307:1-7-02(A)(3); R.C. 3307.62(F); *State ex rel. Castle v. State Teachers Retirement Sys.*, 10th Dist. No. 15AP-845, 2016-Ohio-1245, ¶ 50. "Simply put, the statute requires the independent physician to determine whether the applicant is mentally or physically incapacitated for work by a disabling condition for 12 continuous months after filing the application." *State ex rel. Menz v. State Teachers Retirement Bd.*, 144 Ohio St.3d 26, 2015-Ohio-2337, ¶ 20.

{¶ 41} Hayslip bears the burden in this case of demonstrating that Dr. Klejka's report does not constitute "some evidence" to support the board's decision. Hayslip argues that Dr. Klejka and the Medical Review Board members should not have limited their assessment of disability to the two conditions of cervical radiculopathy and ankle pain, and should have considered the many other physical limitations revealed in the medical records. Hayslip also argues that Dr. Klejka never reconciled the inconsistency between Hayslip's uncontradicted restriction to sedentary work and the more demanding requirements of work as a substitute teacher.

{¶ 42} An STRS member applying for disability benefits is entitled to receive them if the applicant is "mentally or physically incapacitated for the performance of duty by a disabling condition, either permanent or presumed to be permanent for twelve continuous months following the board's receipt of an application." R.C. 3307.62(C). Hayslip challenges Dr. Klejka's assessment and the board's determination that the sole disabling conditions that would be considered were cervical radiculopathy and disabling and degenerative ankle conditions. Hayslip points to a myriad of other disabling physical conditions described in his medical evidence, including severe arthritic conditions in his knees, the need to use a cane, morbid obesity, degenerative shoulder joint disease, GERD, and diabetes. Ohio Adm.Code 3307:1-7-01(B) sets the requirement for a disability application, including an attending physician's report based upon an examination

conducted within two months of the report and supporting medical documentation. Ohio Adm.Code 3307:1-7-01(C) further develops the guidelines for the physician's report, specifying that the physician should have established a "therapeutic relationship" with the applicant and completed a report that the applicant is "incapacitated for the performance of duty by a disabling condition that is presumed to be permanent." Hayslip, in this case, submitted reports from his two attending physicians who certified two disabling conditions: cervical radiculopathy and ankle pain. Hayslip now argues the commission was bound to consider all the other medical circumstances related in the records. Hayslip relies on *State ex rel. Bruce v. State Teachers Retirement Bd. of Ohio*, 153 Ohio App.3d 589, 2003-Ohio-4181 (10th Dist.) for the proposition that STRS is *required* to expand the scope of medical inquiry and examine all the medical evidence, whether certified as disabling or not by the attending physician's report. *Bruce*, to the contrary, states only that STRS has discretion to expand the scope of medical inquiry but is in no way required to do so.

{¶ 43} As required by statute and regulation, the board's independent medical expert, Dr. Klejka, personally examined Hayslip and reviewed his records. In addition to the limited basis for disability announced in Hayslip's application, and based on those designated conditions, Dr. Klejka performed the independent medical examination and record review. Dr. Klejka's report indicated a comprehensive physical examination and assessment of all Hayslip's conditions. Even considering all the conditions, and the report does not, until its final conclusions expressly limit its examination, Dr. Klejka ultimately determined that relator could perform his job as a substitute teacher.

{¶ 44} Based on examination and record review, Dr. Klejka determined that Hayslip suffered from cervical stenosis, C6 radiculopathy, bilateral ankle pain with arthritic changes, tendinitis noted of the right ankle, probable bilateral carpal tunnel syndrome, chronic low back pain, probable osteoarthritis of the knees with crepitus audible on physical exam, overall chronic pain syndrome with depression, well balanced by probable symptom magnification. (Stip. at 55.) Dr. Klejka concluded that Hayslip, when working, would need to change position from standing to sitting frequently, and was in fact limited to sedentary job duties, as stated in the FCE found in the record. Dr. Klejka's report constitutes some evidence to support the board's decision.

{¶ 45} With respect to the conclusion that an applicant who has a declared functional capacity of work activity no greater than sedentary work could perform substitute teacher duties classified as light duty, the board does not express an argument to the contrary.

{¶ 46} Dr. Klejka did not declare Hayslip to be capable of either sedentary or light-duty work, but framed his opinion of Hayslip's capacity to work exclusively in terms of the defined alternate sitting and standing requirements for a substitute teacher as presented in the school system's job description. The vocational specialist, Brett Salkin, opined to the contrary that no teaching positions can be performed at the sedentary exertional level, based upon definitions found in the *Dictionary of Occupational Titles*, which describes all teaching positions as light-duty work. Dr. Klejka's medical record review noted and did not discard the FCE evaluation undertaken in August 2018, which restricted Hayslip to sedentary work.

{¶ 47} The magistrate finds the actual job duties described by the employer, which were not contradicted by any evidence in the record, are the substantive standard in this case and supersede any formal classification as "light duty" or "sedentary duty" for purposes of ascertaining disability. Dr. Klejka opined, and the board's Medical Review Board agreed, that Hayslip can perform the essential duties of his job as substitute teacher. There is some evidence in the record to support the board's conclusion, and it is therefore the magistrate's decision and recommendation that the writ of mandamus be denied based on the absence of any abuse of discretion on the part of the board.

/S/ MAGISTRATE
MARTIN L. DAVIS

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii),

unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).