[Cite as *State ex rel. Borling v. State Teachers Retirement Sys. Bd. of Ohio*, 2023-Ohio-838.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, ex rel. Darlene Borling, | : | |
| | : | No. 22AP-294 |
| Relator-Appellee, | | (C.P.C. No. 20CV-7365) |
| | : | |
| | | (REGULAR CALENDAR) |
| v. | : | |
| State Teachers Retirement System Board of Ohio, | : | |
| | : | |
| Respondent-Appellant. | : | |
| | : | |

D E C I S I O N

Rendered on March 16, 2023

**On brief:** *Seeley, Savidge, Ebert & Gourash, Co., LPA, Gary A. Ebert,* and *Clare C. Moran* for appellee. **Argued:** *Clare C. Moran.*

**On brief:** *Dave Yost*, Attorney General, *Samuel A. Peppers, III*, and *Lisa A. Reid* for appellant. **Argued:** *Lisa A. Reid.*

APPEAL from the Franklin County Court of Common Pleas

MENTEL, J.

{¶ 1} Respondent-appellant, State Teachers Retirement System Board of Ohio ("STRS"), appeals from a May 12, 2022 decision and entry of the Franklin County Court of Common Pleas granting the request for a writ of mandamus of relator-appellee, Darlene Borling ("Borling"), to remand this action to STRS for review of her disability application to consider whether her mixed connective tissue disorder ("MCTD"), is a disabling condition entitling her to disability benefits. For the reasons that follow, we affirm.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}    Borling was employed as a teacher with Columbia Local School District and is a member of STRS.  Borling last worked as a teacher on February 22, 2019.  On March 8, 2019, Borling was admitted at the Cleveland Clinic for treatment related to cryptococcal meningitis ("CM").  (Jan. 6, 2021 Record of Proceedings at 0F364-N91.)  Borling was discharged on March 21, 2019.[1]  On March 26, 2019, Borling was readmitted to the hospital experiencing "[f]evers * * * likely attributable to an IRIS syndrome or her connective tissue disease."  (Record of Proceedings at 0F364-N77.)  Borling was later discharged on April 3, 2019.  Borling's internist, Dr. Rena Bose ("Bose"), provided treatment for CM and recommended follow up with a rheumatologist for "underlying [m]ixed connective tissue disorder."  (Record of Proceedings at 0F364-N80.)

{¶ 3}    On April 26, 2019, Borling filed an application for disability benefits with STRS.  The application included an attending physician's report by Bose and medical records from the Cleveland Clinic.  According to the application, Borling identified Bose as the physician treating her primary disabling medical condition, CM, and noted her admission to the Cleveland Clinic on both March 8 and March 26, 2019.  (Record of Proceedings at 0F364-N66.)  In section 7, Borling consented to the release of medical reports from both Bose and her rheumatologist, Dr. Judith Manzon ("Manzon").  (Record of Proceedings at 0F364-N67.)

{¶ 4}   Borling provided an Attending Physician's Report by Bose with her application.[2]  In the report, Bose identified CM as Borling's primary disabling condition and listed MCTD and amyloidosis as "[o]ther significant medical condition(s)."  (Record of Proceedings at 0F364-N74.)  Bose indicated that both CM and MCTD were disabling conditions.[3]  In the recommendation section, Bose certified Borling was disabled by CM and expected to last 12 or more months.  Bose provided various medical records from Borling's March 8 and March 26, 2019 hospitalizations at the Cleveland Clinic.  Of note, the

---

[1] Of note, the hospital's discharge summary documented Borling's past medical history for "RRMS on no DMT, *MCTD*, localized amyloidosis, and mesenteric panniculitis on chronic steroids."  (Emphasis added.) (Record of Proceedings at 0F364-N91.)

[2] Per the instructions provided in the applications, "[c]onditions listed as disabling will only be reviewed if standard objective medical evidence is provided."  (Record of Proceedings at 0F364-N74.)

[3] The form states that the Attending Physician's Report should be provided by the physician treating the applicant's "primary disabling medical condition" and "[o]nly one *Attending Physician's Report* is required."  (Emphasis sic.) (Record of Proceedings at 0F364-N66.)

medical records confirmed Borling was being treated for both CM and MCTD during this period.  (*See* Record of Proceedings at 0F364-N76-77, N80.)

{¶ 5}   In a letter dated April 26, 2019, STRS informed Borling that "more disability application information [was] required" asking Borling to "have [her] physician submit the discharge summary from [her] stay at Cleveland Clinic Main Campus."  (Record of Proceedings at 0F364-P59.)  STRS did not seek any other information or note any deficiencies in the application at that time.  STRS received the requested discharge summaries on May 2, 2019.  Relevant to the instant appeal, additional evidence of Borling's connective tissue disease was included in the records.  STRS deemed Borling's application complete on May 2, 2019.  (Record of Proceedings at 0F364-O82.)

{¶ 6}   On May 7, 2019, Dr. Martin Gottesman ("Gottesman"), on behalf of the STRS Medical Review Board, advised Borling a period of treatment of six-months was needed prior to any determination of disability.  Gottesman reasoned that "[t]his is based on the current information in the medical records which indicate disability for medical reasons." (Record of Proceedings at 0F364-O7.)  On May 8, 2019, STRS notified Borling that her completed application was received and wrote "[e]xaminations for determining eligibility for disability benefits will be assigned by the Medical Review Board only for conditions listed as permanently disabling and supported with medical evidence by your physician(s). Your attending physician(s) provided support for the following condition, [CM], to be processed." (Record of Proceedings at 0F364-P60.)

{¶ 7}   Borling sought additional treatment during the six-month period.  The records provided include progress notes from Borling's June 13, 2019 examination with Manzon noting Borling's diagnosis of "[u]ndifferentiated connective tissue disease." (Record of Proceedings at 0F364-O16.)  On July 22, 2019, Borling provided additional medical records to STRS that included a July 17, 2019 letter from her infectious disease physician, Dr. Patricia Bartley ("Bartley").  Bartley "certif[ied]" that Borling has been under her care for CM "complicated with immune reconstitution syndrome in setting immunosuppression from multiple sclerosis, undifferentiated connective tissue disease, [and] amyloidosis (likely AA), localized around mid trachea, Hx of chronic pulmonary nodules mesenteric panniculitis, requiring Medrol dose between 2 to 6 mg." (Record of Proceedings at 0F364-O26.)  Bartley recommended that Borling not return to work and

should continue with restrictions.  On October 31, 2019, Borling provided additional medical records regarding her treatment for both CM and MCTD.  These records included an October 17, 2019 letter from Bartley recounting Borling's treatment and diagnosis for, among other things, undifferentiated connective tissue disease.  (Record of Proceedings at 0F364-O52.)  The records also included a letter from Bose that stated Borling was still receiving treatment for CM and still suffered from, among other diagnoses, connective tissue disease.  (Record of Proceedings at 0F364-O64.)

{¶ 8}  On November 7, 2019, STRS instructed Dr. Donald Mann ("Mann"), to provide an independent medical examination of Borling "only on the condition of [CM]." (Record of Proceedings at 0F364-P69.)  On December 12, 2019,[4] Mann provided a report of his examination.  Mann began his report qualifying his findings noting that his review was limited to examining whether CM was a disabling condition.  (Record of Proceedings at 0F364-O78.)  Mann found,"[Borling] experienced a bout of [CM] earlier this year which required intense treatment. From that condition she has recovered."  (Record of Proceedings at 0F364-O80.)[5]  Mann concluded that Borling was not disabled for CM as she

---

[4] The report was received on December 13, 2019.

[5] We are struck by the juxtaposition between Mann's conclusion that Borling has recovered from the CM and his description of her extensive medical limitations. Mann described Borling's medical history and condition as follows:

> Ms. Borling age 63 is troubled with numbness in four extremities extending from the forearm to the fingers greater on the right side and in both shins and feet. This symptom has been persistent for the past fifteen years. She experiences difficulty walking moderate distances at which point legs cramp and she must sit down for relief. Daily bladder incontinence is present required a pad.
>
> Fatigue is such that minor household chores such as meal preparation and light cleaning require a rest after which she starts all over again.
>
> Over the past year stinging pains have been present in the lower extremities brought on by standing or walking and in the upper extremities by manual activity.
>
> The first diagnosis of multiple sclerosis came in 1998 with left visual field distortion which slowly recovered. The condition was relatively quiet up until 2019 when, amongst other things, she had three episodes of leg weakness in June and October requiring admission for intravenous steroids. In 2019 she developed [CM] requiring hospitalization from March eight to twenty-one. In October an esophageal lesion was discovered to be Barretts.

was not "considered to be physically or mentally incapacitated from * * * her most recent job duties for 12 continuous months from the application complete date." (Record of Proceedings at 0F364-O81.)

{¶ 9} A three-member medical review board consisting of Dr. Marc Cooperman, Dr. James Allen, and Dr. Albert Kolibash reviewed Mann's report and unanimously recommended Borling's application be denied. Dr. Marc Cooperman wrote, "[i]t is my opinion that Ms. Borling is not disabled based on [CM]. She has received appropriate treatment, and has recovered from her acute illness." (Record of Proceedings at 0F364-O83.) On January 14, 2020, Gottesman advised STRS that the medical review board recommended Borling's application be denied. (Record of Proceedings at 0F364-O88.)

{¶ 10} On February 20, 2020, STRS denied Borling's application for disability benefits, which Borling appealed. On February 27, 2020, STRS requested Borling provide additional medical evidence related to her condition of CM. Borling supplemented the application with additional medical documentation. The medical records included documentation from Bose and Bartley on her treatment for CM. Borling also provided records from Manzon of her diagnosis of undifferentiated connective tissue disorder and tracheobraonchial AL Amyloidosis.

{¶ 11} Manzon wrote:

> Ms. Borling was hospitalized March 2019 for posterior [CM]. Her occupation as an educator for school children and the immunosuppressive therapy that she has been receiving puts her at higher risk for infection. Because of the functional limitations related to her autoimmune arthritis and the health complications stemming from her immunosuppressed status, she is currently disabled and has been unable to perform active

---

Immune suppression agents for multiple sclerosis were instituted twice; on each occasion systemic reaction occurred requiring cessation.

Ms. Borling suffers from Lupus Erythematosus over the past ten years, for which she has been taking Prednisone in varying doses.

Lastly, Amylolysis of the trachea was discovered incidentally and is being watched.

Brain MRI September, 2019 showed new cervical cord lesions. In 2018 the brain MRI also showed new lesion in the white matter.

(Sic passim.) (Record of Proceedings at 0F364-O79-80.)

work since March 1, 2019. The duration of the disability cannot be estimated since the disease is characterized by periods of disease flares.

(Record of Proceedings at 0F364-P16.)

{¶ 12} On August 6, 2020, Borling filed her statement of appeal and additional medical evidence. On August 14, 2020, STRS provided Mann the additional medical records and asked him to offer an opinion on whether CM was a disabling condition entitling Borling to disability benefits. Also on August 14, 2020, STRS wrote to Borling that it received the additional medical information. Regarding Borling's claimed disability for MCTD, STRS wrote:

> The chair of the medical review board reviewed all information received on appeal. The initial *Attending Physician's* report from Dr. Bose dated, April 12, 2019, did not provide medical evidence to support processing of [MCTD] or any other conditions other than [CM].

(Emphasis sic.) (Record of Proceedings at 0F364-Q4.)

{¶ 13} On August 24, 2020, Mann issued a report and opinion based on the supplemental medical evidence. Mann concluded that his original recommendation did not change and believed Borling had recovered from CM. On September 3, 2020, STRS informed Borling that the medical review board did not find substantial evidence that conflicts with its prior decision. STRS informed Borling that the disability review panel will evaluate the appeal on September 16, 2020 to provide a recommendation to the retirement board.

{¶ 14} On September 9, 2020, Gottesman filed a memorandum of the record writing that "[w]hile Dr. Bose's Attending Physician Report listed the condition of [MCTD] (for which Ms. Borling saw a rheumatologist), no medical records were supplied with the initial application to document this condition or support the condition as disabling." (Record of Proceedings at 0F364-P56.) Gottesman concluded that the medical review board continues to recommend that disability benefits be denied to Borling as CM was not a disabling condition in this case. Following the September 16, 2020 appeal hearing, STRS took official action to affirm its prior decision to deny Borling's application for disability benefits. (Record of Proceedings at 0F364-Q19.)

{¶ 15} On November 12, 2020, Borling filed a writ of mandamus in the Franklin County Court of Common Pleas against STRS seeking reversal of its denial of her application for disability benefits. On May 12, 2022, the common pleas court granted in part and denied in part, Borling's request for a writ of mandamus. The common pleas court found that there was "some evidence" to support STRS' conclusion, and ultimate denial of Borling's claim, that CM was not a disabling condition entitling her to disability benefits. The common pleas court, however, found "STRS abused its discretion and acted arbitrarily by refusing to consider whether her connective tissue disease was a disabling condition." (May 12, 2022 Decision & Entry at 10.) The trial court concluded that Borling's initial application for disability benefits identified both CM and MCTD as disabling conditions and the medical records attached to the application documented both conditions. The trial court wrote that STRS' narrow review led to "borderline absurd medical reports and opinions regarding whether [Ms. Borling] suffers from a disabling condition." (Decision & Entry at 11.) The case was remanded to STRS to consider whether MCTD was a disabling condition entitling Borling to disability benefits.

{¶ 16} STRS filed a timely appeal on May 17, 2022.

## II. ASSIGNMENT OF ERROR

{¶ 17} STRS assigns the following as trial court error:

> THE COMMMON PLEAS COURT ERRED IN REMANDING BORLING'S DISABILITY APPLICATION BACK TO STRS FOR CONSIDERATION OF MIXED CONNECTIVE TISSUE DISORDER ("MCTD") BECAUSE NO CAUSAL STATEMENT OF A PHYSICIAN ACCOMPANIED BY MEDICAL EVIDENCE SUPPORTING MCTD AS A DISABLING CONDITION WAS SUBMITTED WITH HER APPLICATION, AND ABSENT THAT SUPPORT, STRS WAS WELL WITHIN ITS DISCRETION IN DECLINING TO EXPAND THE SCOPE OF THE MEDICAL INQUIRY.

## III. LEGAL ANALYSIS

### A. STRS' Sole Assignment of Error

{¶ 18} In STRS' sole assignment of error, STRS argues that the court of common pleas erred in remanding Borling's disability application for consideration as to whether MCTD was a disabling condition "because no causal statement of a physician accompanied

by medical evidence supporting MCTD as a disabling condition was submitted with her application." (Bold removed.) (STRS' Brief at vi.)

{¶ 19} The decision whether a member of STRS is entitled to disability retirement benefits falls within the sole province of STRS. *State ex rel. Hulls v. State Teachers Retirement Bd. of Ohio*, 113 Ohio St.3d 438, 2007-Ohio-2337, ¶ 26, quoting R.C. 3307.62(F) ("The state teachers retirement board shall render an order determining whether or not the applicant shall be granted a disability benefit."). Consequently, as the STRS decision is not appealable, a writ of mandamus is available to remedy instances where the board has abused its discretion in determinations regarding disability retirement benefits. *State ex rel. Ewart v. State Teachers Retirement Sys. Bd. of Ohio*, 10th Dist. No. 20AP-21, 2020-Ohio-4147, ¶ 24, citing *Hulls* at ¶ 27.

{¶ 20} In order to be entitled to a writ of mandamus, a relator must demonstrate: "(1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the respondent to provide such relief, and (3) the lack of an adequate remedy in the ordinary course of the law." *Ewart* at ¶ 25, citing *State ex rel. Withers v. State Teachers Retirement Sys. of Ohio Bd.*, 10th Dist. No. 17AP-124, 2017-Ohio-7906, ¶ 19, citing *State ex rel. Brown v. Indus. Comm. of Ohio*, 10th Dist. No. 14AP-722, 2015-Ohio-2923, ¶ 10.

{¶ 21} We review a trial court's decision to grant a writ of mandamus under an abuse of discretion analysis. *Ewart* at ¶ 26, citing *State ex rel. Altman-Bates v. Pub. Emps. Retirement Bd.* 148 Ohio St.3d 21, 2016-Ohio-3100, ¶ 23, citing *State ex rel. Mun. Constr. Equip. Operators' Labor Council v. Cleveland*, 141 Ohio St.3d 113, 2014-Ohio-4364, ¶ 24. It is well-established law that an abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). STRS abuses its discretion when its order is not supported by at least "some evidence." *State ex rel. Hayslip v. State Teachers Retirement Sys. Bd.*, 10th Dist. No. 20AP-64, 2021-Ohio-3495, ¶ 4, quoting *State ex rel. Marchiano v. School Emps. Retirement Sys.*, 121 Ohio St.3d 139, 2009-Ohio-307, ¶ 20, citing *State ex rel. Grein v. Ohio State Hwy. Patrol Retirement Sys.*, 116 Ohio St.3d 344, 2007-Ohio-6667, ¶ 9. Accordingly, "[m]andamus will lie only if the board's decision is not supported by any evidence." *Hayslip* at ¶ 4, citing *State ex rel. Woodman v. Ohio Pub. Emps. Retirement Sys.*, 144 Ohio St.3d 367, 2015-Ohio-3807, ¶ 17.

**{¶ 22}** Here, STRS has a clear legal duty to provide relief if Borling has a legal right to the disability benefits. There is also no adequate remedy in the ordinary course of the law as there is no right to a direct appeal of the decision. *Ewart* at ¶ 24, citing *Hulls* at ¶ 27. The question becomes whether the court of common pleas abused its discretion finding that Borling had a clear legal right to the requested review of her application to determine whether MCTD is a disabling condition.

**{¶ 23}** The General Assembly enacted R.C. Chapter 3307 to establish a retirement system for teachers of public schools with funds for payment of retirement allowances, among other benefits, under the management of STRS. *State ex rel. Ewart v. State Teachers Retirement Sys. Bd. of Ohio*, 10th Dist. No. 18AP-826, 2019-Ohio-2459, ¶ 27, citing R.C. 3307.03. Initial eligibility for disability benefits is set forth under R.C. 3307.62. Pursuant to R.C. 3307.62(C), a member of STRS is entitled to disability benefits when the member is "mentally or physically incapacitated for the performance of duty by a disabling condition, either permanent or presumed to be permanent for twelve continuous months" after the submission of an application to STRS. *See also* Ohio Adm.Code 3307:1-7-01(K) ("A disabling condition shall be 'presumed to be permanent,' if it physically or mentally incapacitates an applicant from the performance of regular duty for a period of at least twelve months from the date of the retirement system's receipt of the completed application.").

**{¶ 24}** Effective June 3, 2021, Ohio Adm.Code 3307:1-7-01(B)[6] states, in order to receive benefits, members must file an application using a form approved by STRS and include, "(1) [a]n application for disability benefits; and (2) [f]or each physician listed on the application for disability benefits, an attending physician's report based on an in-person examination that was completed within the last two months and includes medical evidence; and (3) [a]n employer report including an official job description provided by the last employer. The requirement to submit a job description may be waived by the chair of the medical review board." Ohio Adm.Code 3307:1-7-01(B)(1) through (3); R.C. 3307.62(B). The attending physician must have a therapeutic relationship with the applicant "and have

---

[6] As discussed below, the most recent iteration of the Ohio Adm.Code 3307:1-7-01(B) was not in effect at the time Borling's application was denied. However, for the purpose of subsequent examination of this issue, it is instructive to provide the most recent version of the administrative code within the body of this decision.

completed a report and certified on forms provided by the retirement system the attending physician's opinion regarding a recipient's ability to return to employment. The attending physician shall provide standard objective and pertinent medical evidence supporting the opinion." Ohio Adm.Code 3307:1-7-01(C)(2). The term "[m]edical evidence" is defined as "current physician examinations, observed clinical findings, laboratory findings, diagnosis, treatment prescribed with response and prognosis, hospital discharge summaries and diagnostic testing relevant to the applicant's claimed disabling condition." Ohio Adm.Code 3307:1-7-01(H).

{¶ 25} Once an application is submitted, an independent medical examiner will review the applicant and issue a report to STRS. *Ewart*, 2019-Ohio-2469, at ¶ 27, citing *State ex rel. Menz v. State Teachers Retirement Bd.*, 144 Ohio St.3d 26, 2015-Ohio-2337, ¶ 3, citing R.C. 3307.62(C). If the independent examiner concludes that an applicant is disabled, and STRS agrees, STRS will approve the application. *Id.* at ¶ 27, citing *Menz* at ¶ 3, citing Ohio Adm.Code 3307:1-7-02 and 3307:1-7-01(F); R.C. 3307.62(E). If the independent medical examiner concludes the applicant is not disabled, the application and medical records are reviewed by three independent physicians on a medical review board. *Id.*

{¶ 26} Ohio Adm.Code 3307:1-7-05 supplements R.C. 3307.62 by setting forth the procedures and notice requirements to appeal the denial of a disability benefits application. *Franta v. State Teachers Retirement Sys. of Ohio*, 10th Dist. No. 20AP-230, 2020-Ohio-6843, ¶ 16. When an applicant files an administrative appeal of a denial of benefits, the applicant is permitted to "present additional medical evidence orally at an appeal hearing that will be scheduled by the retirement system or that additional medical evidence as defined in this rule may be presented in writing. Such additional medical evidence shall not have been previously considered by the independent medical examiner or the medical review board." Ohio Adm.Code 3307:1-7-05(B)(3)(a). STRS is allowed to request additional medical evidence or order additional testing by an independent medical examiner. Ohio Adm.Code 3307:1-7-05(B)(5)(e).

{¶ 27} After a careful review of the Attending Physician's Report, we conclude Bose indicated that she treated Borling for CM, MCTD, and amyloidosis. Bose found CM and MCTD were disabling conditions while amyloidosis was not a disabling condition. The

medical records provided with the initial application, as well as the additional documents supplemented before the application was deemed completed, indicate Bose diagnosed and provided treatment for both CM and MCTD. The records also show that during Borling's March 26, 2019 hospitalization for CM, she was treated for fevers attributed to her connective tissue disease. Bose's assessment at the time included treatment for CM and follow up with a rheumatologist for "underlying [m]ixed connective tissue disorder." (Record of Proceedings at 0F364-N80.) There is no doubt the medical records included with the initial application provided objective medical evidence that both CM and MCTD were disabling conditions.

{¶ 28} While STRS does not contest that Borling has a therapeutic relationship with Bose in some fashion, it argues that Bose only provided support for Borling's condition of CM as a disabling condition and not MCTD. STRS argues that Borling was required to provide a separate physician's report by her rheumatologist, Manzon, "causally linking MCTD to her permanent disability." (STRS' Brief at 18.) STRS cites Ohio Adm.Code 3301:1-7-01 in support of its contention that the administrative code provision "clearly contemplates that more than one attending physician may submit a report on an applicant's behalf." (STRS' Brief at 16.)

{¶ 29} STRS mistakenly relies on the most recent version of Ohio Adm.Code 3307:1-7-01 instead of the provision in effect when Borling filed her application. *Compare* Ohio Adm.Code 3307:1-7-01, effective June 3, 2021, "[f]or each physician listed on the application for disabling benefits, an attending physician's report based on an in-person examination that was completed within the last two months and includes medical evidence," *with* Ohio Adm.Code 3307:1-7-01, effective June 10, 2016, "an application for disability benefits; an attending physician's report based on an examination that was completed within the last two months and includes medical evidence, an employer report, and a job description provided by the last employer." The revised language stating "[f]or each physician listed on the application for disab[ility]" was not in place when Borling filed her disability benefits application. *Id*. As the application was filed on April 26, 2019, the Ohio Adm.Code 3307:1-7-01, effective June 10, 2016, would control. In addition to the prior language in the administrative code, STRS' claim that multiple physicians were

required is contradicted by the plain language of the disability benefits application. Section 4 of the application titled, "Attending Physician's Information" reads:

> An *Attending Physician's Report* should be provided to your physician/specialist treating your *primary disabling medical condition.* Your *physician* will be asked to submit the objective medical evidence used to diagnose your disabling condition as well as a recent examination and treatments prescribed. *Only one Attending Physician's Report is required.*

(Emphasis added.)  (Record of Proceedings at 0F364-N66.)

{¶ 30} In the case sub judice, as Bose is the physician treating Borling's primary disabling condition, CM, she was the most suitable individual to complete the Attending Physician's Report.  As Bose also treated Borling's other disabling condition, MCTD, she was qualified to complete the form for MCTD as well.  The form plainly states that "[o]nly one Attending Physician's Report is required." *Id.*  There is no reasonable interpretation of the application that requires Borling to provide an additional physician's report.  While Borling listed her rheumatologist, Manzon, as a physician that could provide records, based on the plain language of the administrative code and application, there is no support for STRS' claim that Borling was required to provide a causal statement from Manzon in the initial application.

{¶ 31} Next, STRS argues that Borling "volitionally limited her application to the one condition certified by Dr. Bose as disabling - CM." (STRS' Brief at 16.)  Upon review, we disagree with STRS' contention on this issue.  The portions of the application provided by Borling do not limit her application solely to CM.  Furthermore, as indicated by the below section of the Attending Physician's Report, Bose "certif[ied]" that Borling was under her professional care since 2013; her last examination was within the last two months; that Borling's primary medical condition was CM; and that the condition was "disabling and expected to last at least 12 or more months" from the date on the form.  (Bold removed.) (Record of Proceedings at 0F364-N74.)  Bose identified, as part of her certification, that both CM and MCTD were disabling conditions while amyloidosis was not a disabling condition.  The application plainly states, "[c]onditions listed as disabling will only be reviewed if standard objective medical evidence is provided." *Id.*  Here, STRS' use of the phrases "primary medical condition" and "[o]ther significant medical condition(s) I

provide treatment for" suggests that the two provisions of the form are to be read together. *Id.* Therefore, the most natural reading of the report is that Bose certified all the statements within this section, i.e., that both CM and MCTD were disabling conditions.

**Report of Attending Physician**

This is to certify that DARLENE BORLING

has been under my professional care since 2013 5+ YEARS AND PRESENT

My last examination of the above patient was (must be within last two months) 4-12-19

Primary medical condition for which I am providing treatment is:

CRYPTOCOCCAL MENINGITIS 03/2019

Primary condition (do not list diagnostic code)          Onset of illness (month/year)

Is this condition **disabling and expected to last at least 12 or more months from today's date?** *(check one)*

[X] Yes. On what date did the condition first prevent the completion of his or her most recent job duties? _____

No. If you do not consider this condition to last more than 12 months from today, within what time period can recovery be expected? _____ months

Conditions listed as disabling will only be reviewed if standard objective medical evidence is provided.

Other significant medical condition(s) I provide treatment for are:

Cryptococal Meningitis          Is condition disabling? [X] Yes [ ] No          RECEIVED BY STRS DEPT. 14

Amyloidosis          [ ] Yes [X] No          APR 2 6 2019

Mixed Connective Tissue          [X] Yes [ ] No

Disorders (Also see Rheum)

2014          10

*Id.*

{¶ 32} STRS contends Bose "declined to certify that [MCTD] was disabling and expected to last 12 months or more, as explicitly required by R.C. 3307.62(C) and Ohio Adm. Code 3307:1-7-01(K). [*Id.*] Dr. Bose clearly determined that MCTD was not permanently disabling." (Emphasis deleted.) (STRS' Brief at 18.) STRS relies on the recommendation section, which reads that Bose "certif[ies] that in my opinion as the treating physician the above-named applicant is incapacitated for the performance of duty and that the disability [CM] expected to last 12 or more months from the date I sign this certification form." (Record of Proceedings at 0F364-N75.)

{¶ 33} As an initial matter, in contravention to STRS' claims, neither R.C. 3307.62(C)[7] nor Ohio Adm.Code 3307:1-7-01(K)[8] include any certification language. As required in R.C. 3307.62(C) and Ohio Adm.Code 3307:1-7-01(K), Bose identified both MCTD and CM as disabling conditions and concluded that Borling was mentally or physically incapacitated for the performance of duty by a disabling condition, either permanent or presumed to be permanent for 12 continuous months. Ohio Adm.Code 3307:1-7-01(C)(2) does have some certification language; however, the provision is far broader than STRS claims. Pursuant to Ohio Adm.Code 3307:1-7-01(C)(2), the attending physician must have a therapeutic relationship with the applicant "and have completed a report and certified on forms provided by the retirement system the attending physician's opinion regarding a recipient's ability to return to employment. The attending physician shall provide standard objective and pertinent medical evidence supporting the opinion." Per the plain language of Ohio Adm.Code 3307:1-7-01(C)(2), Bose has a therapeutic relationship with Borling, completed the report, and "certified on the forms provided by the retirement system" his opinion as to Borling's "ability to return to employment." *Id.* Bose's recommendation was supported by objective medical evidence supporting this opinion. The plan language of the provision requires a physician's certification as Borling's ability to return to work not to each alleged disabling condition.

{¶ 34} We are also not persuaded that Bose did not find MCTD was disabling because it was not repeated as a disabling condition in the succeeding portion of the application. The subsequent portion of the form does not negate Bose's prior certification

---

[7] R.C. 3307.62(C) states:

> Medical examination of the member shall be conducted by a competent, disinterested physician or physicians selected by the board to determine whether the member is mentally or physically incapacitated for the performance of duty by a disabling condition, either permanent or presumed to be permanent for twelve continuous months following the board's receipt of an application. The disability must have occurred since last becoming a member, or it must have increased since last becoming a member to such an extent as to make the disability permanent or presumably permanent for twelve continuous months following the board's receipt of an application.

[8] Ohio Adm.Code 3307:1-7-01(K) states, "[a] disabling condition shall be 'presumed to be permanent,' if it physically or mentally incapacitates an applicant from the performance of regular duty for a period of at least twelve months from the date of the retirement system's receipt of the completed application."

that MCTD was a disabling condition. At least one member of the medical review board reached the same conclusion. As acknowledged in Dr. James Allen's December 20, 2019 letter, "Dr. Bose recommended that [Borling] is disabled due to [CM] and [MCTD]." (Record of Proceedings at 0F364-O84.) At the very least, the recommendation section is vague on this point creating more reliance on the far more detailed discussion of Bose's treatment in the "Report of Attending Physician" portion of the application.[9] Given these facts, STRS' consideration of additional medical evidence for CM but refusal—based on the purported issue in the initial application—to consider Manzon's February 20, 2020 letter concluding MCTD is a disabling condition constitutes an arbitrary denial of Borling's claim. This is not an instance of conflicting medical opinions or varying accounts of an applicant's injury. This is a simple case of STRS failing to review all of the claimed disabling conditions then asserting, erroneously, that the initial application was deficient. As such, STRS abused its discretion and acted arbitrarily by refusing to consider whether connective tissue disease was a disabling condition.

{¶ 35} STRS next cites Ohio Adm.Code 3307:1-7-02(A)(2) contending that medical review board examinations are only assigned for " 'conditions listed as disabling by the attending physician and supported by objective medical evidence.' " (STRS' Brief at 17), quoting Ohio Adm.Code 3307:1-7-02(A)(2). STRS also cites Ohio Adm.Code 3307:1-7-02(A)(1), for the proposition that the attending physician will only review conditions the applicant's attending physician " 'claims as disabling.' " *Id.*, quoting Ohio Adm.Code 3307:1-7-02(A)(1). Pursuant to Ohio Adm.Code 3307:1-7-05(B)(3)(a)(i)(a), any "additional medical evidence must be related to the conditions presented and supported as part of the initial application." As evidenced in the above section of Borling's initial application, Bose, certified—or as required in the above provisions of the administrative code, "listed," "claim[ed]," or "presented"—MCTD as a disabling condition and supported this conclusion with objective medical evidence. Accordingly, we also find this argument without merit.

{¶ 36} STRS goes on to argue that the trial court suggests that STRS should "fish through voluminous records, identify potentially disabling conditions, and then obtain

---

[9] This is not to suggest that Borling's condition of MCTD is necessarily a permanent disability. We merely note that Bose certified both injuries as disabling in the initial application. Whether STRS or subsequent medical professionals decide otherwise is outside the scope of this appeal.

additional medical records or schedule exams on conditions not identified by the applicant as disabling." (STRS' Brief at 19.) STRS loses its way with this argument. Bose identified CM and MCTD as disabling conditions in Borling's initial application and provided objective medical records requiring review. Despite Borling's initial claim that MCTD was a disabling condition, STRS limited the physicians in their review to solely determine whether CM rendered Borling disabled entitling her to disabling benefits. While STRS contends there was a "panoply" of serious medical conditions listed on Borling's application, only two were ever identified as disabling conditions, CM and MCTD. *Id.* Arguendo, STRS' argument would have merit if Borling had claimed STRS should have examined whether amyloidosis constituted a disabling condition as Bose expressly concluded in the initial application that, unlike CM and MCTD, amyloidosis was not a disabling condition. MCTD, however, has been consistently identified as a disabling condition since the initial application. As such, STRS' claim that obtaining additional medical records or scheduling exams for MCTD is somehow an additional burden is disingenuous at best.

{¶ 37} STRS cites our decision in *Hayslip* for the proposition that it has the discretion, but is not required, to expand the scope of its inquiry to consider whether MCTD was a disabling condition entitling Borling to disability benefits. A brief review of *Hayslip* is instructive.

{¶ 38} In *Hayslip*, relator filed an initial application with STRS for disability benefits. After the initial examination and three members of the STRS medical review board reviewed the matter, STRS concluded that Hayslip's application for disability retirement should be denied finding none of his conditions prevented him from performing his teaching duties. On appeal, Hayslip provided additional medical evidence with a report from an internist that stated, "Hayslip was restricted to lifting no greater than ten pounds occasionally, medically required the use of a cane for standing or walking, and that Hayslip could sit or stand for three to six hours in a work day, and stand or walk for up to one and one-half hours. (Stip. at 151.) Dr. Hochman concluded that Hayslip was limited to sedentary work. (Stip. at 151.)." *Id.* at 16. Hayslip also included documentation from a vocational specialist as to whether Hayslip's physical limitations impacted the position of a substitute teacher. The specialist found "there were no school teaching positions that could

be performed at the sedentary exertional level, and noted that a pertinent reference work, the *Dictionary of Occupational Titles*, defines all teaching positions as light-duty work, not sedentary." (Emphasis sic.) *Id.* at 17. The additional medical evidence in support of Hayslip's appeal was reviewed by the initial physician and medical review board, which maintained their continued recommendation that disability benefits be denied. After the STRS review panel again denied disability benefits, Hayslip filed his complaint in mandamus with this court. *Id.* at 18. Pursuant to Civ.R. 53 and Loc.R. 13(M), we referred the matter to a magistrate. The magistrate concluded:

> [T]he actual job duties described by the employer, which were not contradicted by any evidence in the record, are the substantive standard in this case and supersede any formal classification as "light duty" or "sedentary duty" for purposes of ascertaining disability. Dr. Klejka opined, and the board's Medical Review Board agreed, that Hayslip can perform the essential duties of his job as substitute teacher. There is some evidence in the record to support the board's conclusion, and it is therefore the magistrate's decision and recommendation that the writ of mandamus be denied based on the absence of any abuse of discretion on the part of the board.

*Hayslip* at 24-25.

{¶ 39} The relator filed objections to the magistrate's recommendation. This court overruled relator's objections concluding that the doctor's report constituted "some evidence" supporting the denial by STRS of relator's disability benefits. We also determined that while there could be contrary evidence that technically classified teaching as "light duty" rather than "sedentary duty" it was not dispositive and did not overcome the "some evidence" standard of review. *Id.* at 5. Relevant to the instant appeal, relator cited our prior decision in *State ex rel. Bruce v. State Teachers Retirement Bd. of Ohio*, 153 Ohio App.3d 589, 2003-Ohio-4181 "for the proposition that STRS is required to expand the scope of medical inquiry and examine all the medical evidence, whether certified as disabling or not by the attending physician's report." *Hayslip* at 22. We rejected this argument writing that STRS has the discretion to expand the scope of medical inquiry beyond the certified conditions but is not required to do so.

{¶ 40} *Hayslip* is distinct in several ways. First, the *Hayslip* court found that there was some evidence in the record that relator could perform the essential duties of his job as

a substitute teacher based on the identified disabling conditions. Here, despite Bose certifying and providing objective medical documentation that Borling's MCTD was a disabling condition, MCTD was never reviewed by STRS. Moreover, Hayslip's other conditions were not identified as "disabling of themselves." *Hayslip* at 7. Despite this conclusion, the board's independent medical expert in *Hayslip* examined the relator and reviewed his records. The independent medical expert "indicated a comprehensive physical examination and assessment of *all Hayslip's conditions*. Even considering all the conditions, and the report does not, until its final conclusions expressly limit its examination, Dr. Klejka ultimately determined that relator could perform his job as a substitute teacher." (Emphasis added.) *Hayslip* at 22-23. Conversely, the physicians in this case were limited in their review as to whether CM, alone, was a disabling condition. While STRS does have discretion to expand the scope of the medical inquiry, it must review the certified disabling conditions if objective medical evidence is provided in the initial application. The form plainly states that "[c]onditions listed as disabling will only be reviewed if standard objective medical evidence is provided." (Record of Proceedings at 0F364-N74.) While STRS did not abuse its discretion by declining to expand the search to other conditions not identified as disabling, e.g. amyloidosis, it erred by failing to include MCTD in its initial inquiry as to whether Borling was entitled to disability benefits.

{¶ 41} Finally, STRS argues that there is "some evidence" based on Mann's report and addendum supporting STRS' decision to deny Borling's application. We disagree.

{¶ 42} On November 7, 2019, STRS instructed Mann to provide an independent medical examination of Borling "only on the condition of [CM]." (Record of Proceedings at 0F364-P69.) On December 12, 2019, Mann wrote "Ms. Borling experienced a bout of [CM] earlier this year which required intense treatment. From that condition she has recovered." (Record of Proceedings at 0F364-O80.) In its August 14, 2020 letter, STRS requested Mann "provide [his] opinion of whether the member is incapacitated from the performance of duty * * * based on the condition of [CM] only." (Record of Proceedings at 0F364-Q5.) Mann never found Borling was not disabled based on MCTD. In fact, Mann expressly limited his review "[r]egarding reconsideration of disability status based on new information as it relates to [CM] only." (Record of Proceedings at 0F364-P53.) Similarly, the physicians composing the medical review board, Dr. Marc Cooperman, Dr. James Allen,

and Dr. Albert Kolibash, noted Borling's health issues, including MCTD, but denied disability benefits on the limited basis of her recovery from CM.  Given these facts, we disagree that there is some evidence in Mann's report that Borling is not disabled as the disabling condition at issue, MCTD, was never reviewed.

{¶ 43} Accordingly, based on the above evidence, the trial court's determination that STRS "acted in an unreasonable and arbitrary manner in failing to allow review of whether Ms. Borling's mixed connective tissue disorder was a disabling condition" was reasonable and not an abuse of discretion.  (Decision & Entry at 12.)  STRS' sole assignment of error is overruled.

## IV.  CONCLUSION

{¶ 44} Having overruled STRS' sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BEATTY BLUNT, P.J. and JAMISON, J., concur.

_____